# Backus & a. *vs.* Lebanon & a.

A charter, granting to certain individuals the right to organize and form a corporation, with power to construct a turnpike road, take tolls, &c., is a contract, within the protection of the clause in the constitution of the United States, prohibiting the several states from passing laws impairing the obligation of contracts.

But this does not exempt the property of the corporation, including the franchise, from the power of eminent domain, or from contributing, like other property, to the public burdens.

It does not impair the obligation of the contract to take the property for public use, even if the powers of the corporation are thereby suspended, or the corporation itself in fact dissolved.

The construction of a turnpike road, by a corporation chartered for that pur-

pose, does not preclude the exercise of the power of eminent domain, in providing for a free public highway over the same ground.

Nor will a provision in the charter of the turnpike corporation, by which the state reserves the right to purchase the property, after a certain period, at a certain price, prevent the legislature from taking the property for a public highway, in the ordinary mode.

It is not necessary to the exercise of the power of eminent domain, that there should be a special act of the legislature, in each particular case. It may be exercised through the action of general laws, and of judicial tribunals.

A provision for a trial by jury is not necessary in order to ascertain the damages occasioned by the laying out of a highway, it having been " otherwise used and practised" before the adoption of the constitution.

PETITION FOR A HIGHWAY. On the coming in of the report of the committee, laying out a highway, according to the prayer of the petition, it appeared that a portion of the highway was laid over the Fourth New-Hampshire Turnpike. By the charter of the turnpike corporation, granted in 1800, the grantees were constituted a corporation, without limitation of time ; and power was granted them to make a road, to erect gates, appoint toll-gatherers, take tolls, and to prevent persons from passing without payment. There was a clause, also, by which the state reserved the right, at the expiration of forty years, to resume the same, on paying the corporation the sums expended originally and for repairs, with twelve per cent. interest, deducting therefrom the amount of tolls received.

Objections being made, in the common pleas, to the acceptance of the report, the case was transferred for the consideration of this court,

*Bell*, for the turnpike corporation, contended for the following propositions. 1. The charter is a contract, within the meaning of the constitution of the United States.

2. The right of eminent domain does not reach contracts under the protection of this clause in the constitution.

3. The state has power to provide highways, and the legislature may choose, and have chosen, the means by which they will fulfil that duty. Turnpikes are lawful ways,

under the constitution. They cannot be taken to make free highways. If the state may take what the public exigencies require, that does not affect this case. The right is to have a way. Having selected the mode, and granted the way, it cannot be taken for the same object. This line of travel has been appropriated to the public use. The grant being for the public travel, nothing farther can be claimed for that purpose.

4. The state cannot take the franchise. It may be compared to a grant in fee. The legislature cannot take that fee. Only an easement can be taken.

5. The state has reserved in the contract the mode and manner by which they may take for the public. The right of eminent domain is here provided for.

6. The power to take by eminent domain cannot be transferred to any subordinate agent. It must be done by the state itself.

7. The corporation have a right to have their damages assessed by the jury. *Bill of Rights, Art.* 20. The act of July 2, 1838, cannot be sustained under the provisions of the constitution.

*Bartlett*, for the petitioners, admitted that the charter was a contract, but argued that this did not exempt the property held under it from being taken for public use. Suppose the corporation held by a lease for years, the state might take the whole interest for the public use.

The public have only a qualified interest in the turnpike. They require a use free from restrictions.

The franchise of the corporation is no more dedicated to the public use, than it would have been if the legislature had granted a mill seat. The property may be taken, or any part of it, without conflicting with the grant.

Suppose the legislature had granted land in fee, with a provision that they might re-purchase at the end of fifty years, that would not exclude the right of eminent domain.

The legislature, if the doctrine contended for is true, might grant a turnpike from one end of the state to the other, and it could not be touched—or a single bank, with exclusive privileges, and no other bank could ever be granted.

As to the last objection—The constitution provides for a trial by jury, in cases where it had not been otherwise used and practised. But it had been otherwise practised in the assessment of damages for property taken in laying out highways.

PARKER, C. J.   It is admitted that the charter, under which the Fourth New-Hampshire Turnpike corporation has been organized, and has constructed its road, is a contract, and within the protection of the clause of the constitution of the United States, prohibiting the several states from passing any laws impairing the obligation of contracts. But what is the contract ?   It is a grant, to the individuals, of a right to organize and form a corporation, with power to construct and keep in repair a road in a certain place ; to erect gates, take tolls, and prevent persons from passing without payment.   That grant has taken full effect.   The organization has been made ; the road has been constructed ; and the corporation has been in the full exercise of all its powers. But we look in vain for any stipulation, that the property acquired by the corporation under that contract, whether that property be corporeal or incorporeal, shall be exonerated from contributing, like other property, to the public burdens, or be exempted from any liability to which property is usually subjected in the hands of any citizen of the state. There is nothing in the terms of the grant, nor in the nature of the case, to show a contract, express or implied, that the property of the corporation should not be taken for the public use, if it holds any of such a nature that the public exigencies may require it for that purpose.   No clause of the charter has been cited which has the most remote tendency to show any express stipulation of that character.   Nor can

Backus *v.* Lebanon.

such a stipulation be inferred from the grant of a right to organize as a corporation; or from the grant of a right to acquire property for a particular use, and to take a compensation, in the shape of tolls, for the use of it. Nor can it be inferred from the nature of the property. The fact that the corporation does not own the fee of the land over which the road is constructed, does not imply any such stipulation, nor the fact that a part of the property is a franchise. We are not aware of any principle by which the power of eminent domain is to be restrained from operating upon property of either description. It may be as necessary to take the property of an individual, for public use, where he owns only an incorporeal hereditament, as where he owns the fee simple. And the property of a corporation possesses no greater immunity.

It does not impair the obligation of a contract, therefore, to take any of the property of this corporation for the public use, because there is by the charter no contract of that character, express or implied. And if the taking of the property may, incidentally, even put an end to the exercise of the corporate powers, because there is nothing left for their exercise, that will not prove that the property may not be taken. There is no contract that the corporation may not be dissolved, or its operations be suspended, by a subsequent exercise of the power of eminent domain, if their property, franchise included, is of such a nature that that power may operate upon it. The first and second exceptions must, therefore, be overruled. 7 *N. H. Rep.* 35, *Piscataqua Bridge* vs. *N. H. Bridge ;* 8 *N. H. Rep.* 398, *Barber* vs. *Andover ; Peirce* vs. *Somersworth,* 10 *N. H. Rep.* 369.

The corporation, like the individual, is guarded from a despotic exercise of power. Whatever is taken must be paid for. And it may be true that the power does not extend to the destruction of rights, whether individual or corporate, merely because an opinion exists that it may be beneficial to the public that they should be extinguished. It may be

that the power does not extend to cases where no public use can be had of what is taken, even if a provision for compensation is made. It is not necessary to settle that here.

But it is argued that the state, having made provision for a way here, which may be used by the public, cannot make further provision for the same object, and take the franchise of the corporation for that purpose; and, furthermore, that as the charter contains a provision by which the state may acquire the property, on certain terms, the right of eminent domain is thereby provided for, and that it cannot be exercised in any other mode.

Had the charter contained an express stipulation that the property of the corporation should never be taken in the exercise of the power of eminent domain, the question would at once have arisen, whether it was competent for any legislature to make a contract of that character—whether any legislature has authority, by contract, to lay restrictions upon this power. We have already had occasion to indicate a pretty strong impression upon that subject; and it is only necessary, at this time, to say, that we have as yet seen no reason to change the views heretofore suggested. 7 *N. H. Rep.* 69; (10 *N. H. Rep.* 138, *Brewster* vs. *Hough.*)

The fact that the public may now have a use of the road constructed by the turnpike corporation, does not show that the public interest may not require that a public highway be laid over the same ground. The right at present enjoyed, although a public use, is of a limited character, subject to the payment of a toll; and there may be a necessity for an open public highway, which all the citizens may use free from charge. The use which already exists is of the same nature with that which will exist if an open public highway is laid out; but the right to use is not the same. The public are entitled to have not merely a way, but a free passage, such as is enjoyed in other parts of the state, whenever the public exigencies shall require such a right of way; and there is nothing in the nature of the corporation, or of the property

it holds, to prevent the existence and exercise of this right. It is not admitted that the legislature, having granted a fee to an individual, may not take that fee for public use, paying a compensation, if it can be shown that the public necessities require that the whole fee be taken. This would not annul, or abrogate, or impair, the contract by which the grantee acquired the property, but would be in effect a repurchase, through the power and right of eminent domain; and that purchase may be *in invitum,* if the owner does not consent to part with the property.

Nor does the provision of the charter by which the legislature reserved the right to purchase the property, with the consent of the corporation, (given through their acceptance of the charter,) prove, by any means, that the right of eminent domain was thereby surrendered; even if the legislature might be supposed to possess the power to make such a surrender. That provides a mode by which the government might, after a certain period, come into possession of all the property of the corporation; and a mode which would not have existed, but for the provision in the charter itself. But this reservation does not seem to us to imply, in any manner, a relinquishment of any right by which the property of the corporation, or a part of it, might be taken for public use. If the legislature should grant land, to an individual, in fee, with a reservation of a right, at the expiration of a term of years, to resume the property granted, upon the repayment of the purchase money with interest, that could not be construed as implying that a public highway should not be laid through it, in the ordinary exercise of the power of eminent domain. And the principle would be the same, if the tract was of such a shape and character, that the whole of it was afterwards required by the public exigencies.

It is further contended, that the power to take by eminent domain cannot be transferred to any subordinate agent, but must be exercised by the state itself. The argument seems to be, that each individual exercise of the power must be by

a legislative act.  No authority is cited in support of this proposition ; and it is certainly in conflict with the practice of this government from its first institution, and it is believed with that of all others of the United States.  As early as 1639, the colony of Massachusetts Bay made provision for laying out highways through the action of the court of the county, and the appointment, by such court, of individuals for that purpose. *Charters and Colony Laws* 126.  In 1641 and 1642, the inhabitants of the settlements, then existing in New-Hampshire, united themselves to the Massachusetts colony.  On the separation, in 1680, and the organization of a provincial government here, it was enacted by the assembly, that the laws they had formerly been governed by should be the rule in judicial proceedings, so far as they would suit our constitution, and not be repugnant to the laws of England, until others were legally published.  And in 1719 an act was passed by which the court of quarter sessions were empowered to appoint committees to lay out highways. *Prov. Laws* 153.  Similar provisions, authorizing the courts of the counties to exercise a jurisdiction for this purpose, have been enacted, and acted upon, without any question respecting their constitutionality, up to the present time.  It would require very strong reasons to authorize us to break in upon, and condemn, this continued practice of two centuries ; but none have been suggested, and none present themselves to us.  If the power of eminent domain is exercised through the action of general laws, and judicial tribunals, there is probably quite as little danger to be apprehended from its abuse as in any mode which can be devised.

To the last exception, the answer of the counsel for the petitioners is conclusive.  This case is within the express exception of the clause in the constitution which provides, that " In all controversies concerning property, and in all suits between two or more persons, except in cases in which it has been heretofore otherwise used and practised, the parties have a right to a trial by jury," &c.  By the long course

of legislation, to which reference has just been made, the damages occasioned by the laying out of highways were to be assessed by the court, or by a committee ; and no provision is found for the intervention of a jury, in cases of that character. It had, therefore, been " otherwise used and practised," for nearly a century and a half before the adoption of the constitution ; and a similar use and practice has prevailed from that period up to the present time. The case is not only within the express language of the exception, but there is, from these circumstances, abundant evidence that it must have been within the view of the framers of that instrument.

It can make no difference that the power or right to take property for a public highway, is applied to property of a different character from that to which it had been applied before the adoption of the constitution. The principle is, that there is an express exception to the constitutional provision providing for a right to a trial by jury, of those cases in which it had been " otherwise used and practised" ; and it had been otherwise used and practised in all cases where property was taken for public use, by the laying out of a highway. The case, therefore, falls within the principle, although the character of the property taken may in some respects be different.

For these reasons, the exceptions must be overruled, and the case remitted to the common pleas, with directions to accept the report of the committee, and establish the highway.