# COOS,

## JANUARY TERM, A. D. 1857.

### PETITION OF THE MOUNT WASHINGTON ROAD COMPANY.

Where an act of the legislature authorizes a corporation to make a road and take land for that purpose, without the owner's consent, the law must provide for compensation to the land-owner; but it is not necessary that it should give him the right to try the question of damages by a jury.

A private corporation, created for the purpose of making a road open to public travel upon payment of a fixed toll, may be authorized by the legislature to take land for the road without the owner's consent, upon payment of a just compensation, to be determined in some reasonable and convenient method.

If the road is of a public character it rests in the discretion of the legislature to determine whether power shall be granted to take land for it without the owner's consent; and the question whether that discretion has been properly exercised, cannot be entertained in a judicial tribunal.

A road to the summit of Mount Washington and thence to the foot of the mountain, on the other side, open to all travellers on payment of a uniform and fixed toll, is of such public character.

Under a provision in the act of incorporation for assessing the damages to land-owners, damages should be given for all injury done by laying out the road to the tract of land through which it passes, including not only the value of the land actually taken, but all damage from inconvenient division of the tract, and the necessity for additional fencing.

But damages are not to be given for the probable injury which the business of a land-owner may suffer from competition, introduced by the building of the new road.

One of the land-owners was the keeper of a public hotel, and was in the receipt of a considerable income from the letting of saddle horses to those who ascended the mountain by a bridle path, which he had made to the summit.— *Held*, that damages should not be awarded to him as a land-owner, for the probable injury which this business would suffer from competition caused by the building of a carriage way to the summit of the mountain.

PETITION for the assessment of damages to land-owners by the laying out of the petitioners' road.

The petitioners were a corporation, created by an act passed July 1, 1853, which empowered them to lay out a road, " beginning in or near Peabody River Valley, thence to the top of Mount Washington, and thence to some point on the north-westerly side of said mountain, between the Notch of the White Mountains and Cherry Mountain." If the corporation could not agree with the owners of any land over which the road might be laid out, upon the amount of damages to be paid therefor, or upon a committee to assess them, the act provided that either party might apply by petition to the Court of Common Pleas for the county in which the land lay, and that the court should thereupon refer the same to the road commissioners for the county, who should assess such damage and report the same to the court; and that judgment upon the report should be final and conclusive between the parties; and that the corporation should have the right of way over the land, but should not enter upon it, to construct the road, until the damages were paid or tendered, except in cases mentioned in the second section of the fifty second chapter Revised Statutes.

The corporation were empowered to collect certain tolls, and the act was to be void unless ten thousand dollars of the stock were subscribed and paid for within four years.

The petition was entered in the Common Pleas, and referred to the road commissioners, who examined the route, heard the parties, assessed the damages and made their report, showing that the road was laid out through land of J. M. Thompson 248½ rods, through land of John Bellows 97 rods, and through Sargent's Purchase and land of other owners unknown, 2280⅔ rods. The damages awarded to Thompson were thirty five hundred dollars, to Bellows one dollar, and it does not appear by the case sent to this court what damages, if any, were awarded to the other owners.

According to an affidavit of the commissioners, which is made part of the case, it appeared on the hearing before them that Thompson, who was the proprietor of a hotel called the Glen House, was in the receipt of a considerable income from the

---

letting of saddle horses to travellers who desired to ascend the mountain by a bridle path, constructed at considerable expense by or for Thompson, and that in making the award of thirty-five hundred dollars to Thompson, the commissioners proceeded on the ground that damages should be allowed to him for the probable injury that his business would sustain from the competition occasioned from the building of a carriage way to the summit of Mount Washington; that the actual damage to Thompson's land was of comparatively trifling importance, but in the judgment of the commissioners the damage to his business and income, occasioned by the competition arising from the proposed road, would be large, and the commissioners awarded him thirty-five hundred dollars, principally as a remuneration for this damage to his business.

The counsel for the petitioners contended before the commissioners that they had no authority to award consequential damages to Thompson for injury to his business in the way stated, but only to assess the actual and necessary damage done to the land; but the commissioners held otherwise, and assessed damages as is above stated.

The petitioners moved in the Common Pleas that the report be recommitted, upon the ground that the commissioners proceeded on an erroneous principle in assessing the damages to Thompson; and Thompson appeared in the Common Pleas and objected to further proceedings, on the ground that the act incorporating the petitioners is unconstitutional and void, because it undertakes to give a private corporation the right to appropriate land of individuals, without their consent, for private purposes; and also upon the ground that the third section of the act is void, because it undertakes to provide for the taking of land against the will of the owners, without giving any right to appeal from the award of damages made by the commissioners, or providing any way for trying the question by a jury.

*Peabody & Chandler*, for the petitioners.

1. The report should be recommitted, because the commissioners have mistaken the rule of damages.

The commissioners derive all their power in this case from the charter of the road, and must pursue that power strictly. By the charter, the commissioners are to assess *damages for the land;* and the charter, therefore, gave the commissioners no power except to assess damages *for the land taken.*

When the land of individuals is taken for a highway, damages are awarded only for the value of the land taken, the expense of fencing against the road, and the immediate damage done to the land remaining. *Com.* v. *Coombs,* 2 Mass. 489 ; *Com.* v. *Middlesex,* 9 Mass. 338 ; *Perley* v. *Chandler,* 454, 458 ; *Callender* v. *Marsh,* 1 Pick. 418.

Remote and consequential damages to land, although its value be actually diminished thereby, cannot be considered. *Clark* v. *Saybrook,* 21 Conn. 320 ; *Hollister* v. *Union Co.,* 9 Conn. 439 ; *Richardson* v. *Central R. R.,* 25 Vt. 470 ; *Steele* v. *Western Co.* 2 Johns. 283 ; *Lansing* v. *Smith,* 9 Cowen 146 ; *Boulton* v. *Crowther,* 2 B. & Cress. 227. *A fortiori,* conjectural damages, arising, as in this case, from a supposed competition in business, occasioned by the operating of the road, cannot be awarded.

2. The position that this charter is unconstitutional and void, because it gives a private corporation power to take land of citizens without their consent, for private purposes, is not tenable. The act is the exercise by the legislature of the right of eminent domain, and private property is taken by it for public uses only. *State* v. *Hampton,* 2 N. H. 25 ; *Bloodgood* v. *Railroad,* 14 Wend. 57 ; S. C., 18 Wend. 1 ; *Rogers* v. *Bradshaw,* 20 Johns. 742 ; *Buckman* v. *Railroad,* 3 Paige 45 ; *Cottrill* v. *Myrick,* 3 Fairf. 222 ; *Dyer* v. *Bridge Co.,* 2 Porter 296 ; *Harding* v. *Goodlett,* 3 Yerger 41 ; *Chs. River Bridge* v. *Warren Bridge,* 7 Pick. 496, *Putnam,* J. ; *Boston & C. Mill Co.* v. *Newman,* 12 Pick. 467 ; *Boston Water Power Co.* v. *B. & W. Railroad,* 23 Pick. 395, 6 ; *Lumbard* v. *Stearns,* 4 Cush. 61 ; *Scudder* v. *Trenton Delaware Falls Co.,* Saxton 694 ; *Swan* v. *Williams,* 2 Gibbs' Mich. 427 ; *Bradley* v. *New-York and New-Haven Railroad,* 21 Conn. 305.

3. The third section of the charter is not unconstitutional,

because it provides for taking land without the consent of the owner, and without giving him the right to try the question of damages by a jury. The right to a trial by jury is not denied by the act, and the court before whom any report of the commissioners might be pending, would have power to commit the report to a jury for the assessment of damages, though the charter does not expressly provide for such course.

The land-owner is entitled to no trial by jury. His case is not within the twentieth article of the Bill of Rights. *Bachus* v. *Lebanon*, 11 N. H. 19 ; *Baker* v. *Holderness*, 6 Foster 113 ; *Mountfort* v. *Hall*, 1 Mass. 457 ; *Shirley* v. *Lunenburg*, 11 Mass. 385 ; *Ross* v. *Irving*, 14 Ill. 171 ; *Campbell* v. *Head*, 13 Ill. 127 ; *Livingston* v. *Mayor of New-York*, 8 Wend. 102 ; *Bloodgood* v. *Railroad*, 14 Wend. 57 ; S. C., 18 Wend. 1 ; *Beekman* v. *Railroad*, 3 Paige 45 ; *Bonaparte* v. *Railroad*, Baldwin 205 ; *In re, Pennsylvania Hall*, 5 Barr. 204 ; *Hunt* v. *McMahon*, 6 Ohio 78.

*Burns & Fletcher*, for Thompson.

I. By a fair construction of the third section of the act of incorporation, the committee are not confined to the mere value of the land taken for the road, but may take into consideration incidental damages, such as expense of fencing, and any injury that may fairly result to the land-owner. *Dearborn* v. *B. C. & M. R. R.*, 4 Foster 179.

The land-owner, Thompson, had built a road to the summit of Mount Washington, and was in the occupation and use of the same, and the commissioners find that he would be injuriously affected by this corporation taking his land to construct a road according to their charter.

The petitioner does not say it is not equitable that he should have a compensation, but that it is not legal.

The land was worth the amount awarded, to prevent the competition mentioned in the case. We see no difference between this case and one where a man has a store and a plot adjoining, which is taken by a corporation to erect another store upon, and thus come in competition with the land-owner.

Thompson, by owning and controlling the land, was secured from competition.

II. The petitioner takes it for granted that the commissioners' report in this case is subject to the same law as in ordinary cases of laying out highways. But to this we cannot assent.

By an examination of the third section of the act of incorporation, we find nothing that leads the mind to such conclusion.

III. Mr. Thompson contends that the charter is unconstitutional and void:

1. It is a private corporation — for private and not for public purposes.

It is not like a turnpike corporation. There is no clause in the charter by which the corporation is liable to fine or indictment for not keeping the road in repair. Nor is there any article in the grant by which the State can become the owner of the road.

2. The act, being for individual or private emolument, and not for public convenience, is unconstitutional and void.

Perhaps no stronger view of the subject can be taken to show that the road was not one of public convenience and necessity, than to say that the public good does not require that a road should be made over the summit of the highest mountain on this side of the continent.

The eminent domain remains in the government, or in the aggregate body of the people, in their sovereign capacity, and they can resume the possession of private property, not only where the safety, but also where the interest or even the convenience of the State is concerned, as when the land is wanted for a road or canal, or other public improvement. *Beekman* v. *Saratoga & Schenectady R. R. Co.*, 3 Paige 45.

3. The public interest is not promoted by this act of incorporation. The sovereign power has no right to take the property of one citizen and transfer it to another, even for a full compensation, where the public interest will not be promoted thereby. *Ibid.*

The act of the legislature making such transfer would be a

violation of the contract by which the land was granted by the government, and repugnant to the Constitution of the United States. *Ibid.*

PERLEY, C. J.   This corporation was created for the purpose of opening, constructing and maintaining a road for public travel, subject to a toll, granted and limited by the act of incorporation. As it respects the general objects and use of the proposed road, it is in no respect different from the numerous turnpike roads which have been made in this State under legislative grants to corporations erected for that purpose.   In most of the early turnpike charters there is a provision that the State might take the road after forty years, by paying to the corporation the cost and making up the income to twelve per cent., and in some of them there is an express provision, making the roads liable to indictment for neglect to perform their public duty; but neither of these provisions added anything to the public character of the corporation.   The first was prospective, and has been in fact wholly inoperative; and the roads were liable to indictment at common law for any neglect of their duty to the public.   Such roads, being open to all travellers, are public highways; and the circumstance that a toll is paid for the use of them does not deprive them of their public character.   It is said in *Bachus* v. *Lebanon*, 11 N. H. 24, that a turnpike road is a public highway, differing from free roads only in the manner of use.   All citizens may use a turnpike on condition of paying the established toll.

The interest in land necessary for such a road, if authorized to be taken by the legislature, is taken for public use within the meaning of the constitution.   The particular objects of travellers who might have occasion to use the road, whether business or health, or amusement and recreation, could not affect the question whether it was for the use of the public.   If the enterprise was of a public character and the road open to public use, the legislature would have the power to authorize the taking of private property to accomplish the public object.   Whether the public good required the legislature to exercise that power in this

particular instance, was a question for their discretion, and their decision cannot be reversed in a judicial tribunal. *Beekman* v. *Saratoga & Schenectady R. R.*, 3 Paige 73 ; *Varick* v. *Smith*, 5 Paige 160 ; *Harris* v. *Thompson*, 8 Barb. S. C. 350 ; *Springfield* v. *Connecticut Riv. R. R.*, 4 Cush. 69 ; *Clark* v. *Saybrook*, 21 Conn. 313 ; *Piscataqua Bridge* v. *N. H. Bridge*, 7 N. H. 66.

The power to take private property for public use may be exercised by the government through the means of a private corporation. The fact that the members have a pecuniary interest, such as will give it in law the character of a private corporation, will not prevent the State from using it to accomplish a public object. In this State the legislature have exercised that right for sixty years in the case of turnpike roads, and of corporations created for the construction of locks and canals, and aqueducts, and the right can not now be drawn in question. So far as we are informed a different doctrine has not been held in any other jurisdiction. *Lebanon* v. *Olcott*, 1 N. H. 339; *Stevens* v. *Middlesex Canal*, 12 Mass. 466 ; *Boston Mill Dam* v. *Newman*, 12 Pick. 467 ; *Bloodgood* v. *Railroad Co.*, 18 Wend. 9 ; *White River Turnpike* v. *Central Railroad*, 21 Vt. 590 ; *Bradley* v. *Railroad*, 21 Conn. 294; *Whiteman* v. *Railroad Co.*, 2 Harrington 514.

The legislature, then, had authority to take land in behalf of the public, without consent of the owners, for the construction of this road, and might authorize it to be taken by this corporation. But it is objected that in this case the act does not make legal provision for compensation to the land-owner.

We find no express provision in the constitution of this State requiring compensation to be made for private property taken to the use of the public ; and it has been held in some cases that the provision on this subject in the constitution of the United States was intended to limit the action of the federal government, and did not apply to the legislation of the States. We are not quite prepared to acquiesce in this narrowed construction of a general and unqualified proposition in the constitution. It is not necessary, however, to embarrass this case with the consideration

of that question, inasmuch as the anxious care taken in different parts of our own constitution to protect private property from all danger of violation, clearly shows the framers of that instrument to have been as far as possible from any intention to repudiate the well established maxim of universal law, that private property cannot be taken for public use without just compensation to the owner; a maxim recognized in all just and enlightened governments, and which has been assumed as fundamental and unquestionable in all cases where the point has arisen incidentally in this State, and may be considered to have been directly adjudicated in *Piscataqua Bridge* v. *N. H. Bridge*, 7 N. H. 66. We should not hesitate to declare that a legislative act could not be legally enforced which should undertake to appropriate private property to public use without provision for compensation to the owner. When an act authorizes private property to be taken for public use, the law must also provide a legal method of ascertaining the amount of compensation to be paid. It is not enough that the owner may have his action to recover damages against the individual or corporation that enters on his land under the act. *Piscataqua Bridge* v. *N. H. Bridge*, 7 N. H. 66.

It is contended that in this case no such method is provided, because there is no provision in the act for ascertaining the amount of compensation by the inquisition of a jury. The twentieth article of our Bill of Rights has the following provision : "In all controversies concerning property, and in all suits between two or more persons, *except in cases in which it has been heretofore otherwise used and practiced,* the parties have a right to trial by jury." Provisions in the constitutions of some other States, intended to secure the right of trial by jury, have been held to apply only to trials between party and party, where some issue of fact is to be found, and not to inquisitions of this sort. *Callender* v. *Marsh*, 1 Pick. 430, 431 ; *Livingston* v. *Mayor of N. Y.*, 8 Wend. 102 ; *Hunt* v. *McMahon*, 5 Ohio 79 ; *Ross* v. *Irving*, 14 Illinois 171 ; 2 Kent's Com. 339, note 6.

But the language employed in our Bill of Rights is perhaps more comprehensive than the terms used in those constitutions

that have received the construction which I have mentioned.   It is true, that no title to property is involved in an inquiry of damages for taking it to the public use; no issue of fact is tried. But when the parties disagree on the amount of damages to be paid for an interest in land taken to the public use, it may well be regarded as a controversy concerning property in the language of our constitution; and in several cases where this provision has been considered, it would seem to have been taken for granted that such an inquiry would be within the constitutional provision guaranteeing the right of trial by jury, unless it should be found to fall within the exception of cases in which it had been " otherwise used and practiced " at the time when the constitution was adopted; *Bachus* v. *Lebanon*, 11 N. H. 19; *Baker* v. *Holderness*, 6 Foster 110; and we think that the present must be held to fall within the class of cases thus excepted from the operation of the provision.

It has been held that the assessment of damages to land-owners on laying out a public highway need not be by a jury, because it was otherwise used and practiced before the constitution was adopted.   *Bachus* v. *Lebanon*, 11 N. H. 19; *Baker* v. *Holderness*, 6 Foster 110.

I do not find that any acts incorporating turnpike roads were passed before the present constitution was adopted.   But turnpikes are public highways; land is taken for them without consent of the owner, on the same ground of necessity for public use which warrants the taking of it for other highways; the same sort of inquiry is necessary to ascertain the amount of damages, and we see no reason why the same rule of damages ought not to be applied to both cases; and a practical construction for sixty years has included turnpikes in the same class with free public highways, in reference to this point.

The act incorporating the New-Hampshire Turnpike was passed in 1796, and between that time and 1815 about sixty turnpike roads were incorporated by the legislature in this State.   I have not examined all these acts, but have looked into a large part of them; and in all that I have seen there are provisions for taking

land without the owner's consent, and I have found in none of them any method provided for assessing the amount of damages by the jury. This course of legislation, beginning so soon after the adoption of the constitution, and uniformly acquiesced in, has the force of a practical contemporaneous exposition, and the construction thus given and acquiesced in cannot now be disturbed.

Perhaps it may be found, when the question shall arise, that all cases where private property is taken for public use under legislative authority, fall within the scope of this exception, in the article of the constitution which secures the right of trial by jury. The constitution could only lay down maxims and general propositions; it does not undertake to foresee the circumstances which might distinguish particular cases. Whenever it had been found necessary to take private property for public use before the constitution, it appears, so far as we are informed, to have been taken without any assessment of the damages by a jury; and the legislature would seem to have proceeded on the not unreasonable idea that the constitution intended to include all such cases under one class, without distinguishing for what particular kind of public use the private property might be needed. A large number of acts have been passed creating corporations for locks and canals, and some for aqueducts, most of them empowering the corporations to take land without the owners' consent, and containing different provisions for ascertaining the amount of damages. Thus by an act of 1794, in addition to an act erecting a corporation for the purpose of constructing locks round the falls in Connecticut river, the damages were to be ascertained by the selectmen of the town; and the act of 1807, incorporating the White River Falls Co., provided that the damages should be assessed as in the case of highways. *Lebanon* v. *Olcott*, 1 N. H. 339. The act of 1797, creating the Portsmouth Aqueduct Co., provided that the damages should be assessed by the Superior Court, on the report of a committee. In none of the earlier acts have I found any right given to try the question of damages by a jury. The earliest that I have seen which gives that right, is the act of 1828, incorporating the Connecticut River Locks and Canals.

It is also to be observed that the law of 1827, which appears to have been the first that authorized land to be taken for school-houses without consent of the owner, does not give the land-owner the right to try the question of damages by a jury, but leaves that question to be settled in the same manner as in the case of public highways.

It would thus appear that the legislature, commencing almost immediately upon the adoption of the constitution, have in practice gone on the ground that they had power to authorize the taking of land for public use generally, in cases where the public might need it, without providing for an assessment of damages by a jury. The question of their constitutional power depended, in this instance, on the fact whether the use and practice had been such before the constitution was adopted. It would be safe to presume that the public men who assisted to frame the constitution, and those who followed so soon after, would be well informed on this point, and better than we can be at this distance of time. It would be justly regarded as a bold, not to say rash exercise of judicial authority, to declare all these early acts of legislation to have been passed in violation of the constitution, which had then been so recently adopted; especially as in this case the question is to be determined, not so much by a construction of the language used in the constitution, as by reference to the state of facts which previously existed.

We are not called on, however, at this time to decide whether all cases in which private property is taken for public use would fall under this exception in the constitution, as we are satisfied that a turnpike road, like that which is authorized to be made by this act, under the decisions and practice in this State must be held, in reference to that exception, to stand on the same footing with free public highways, and that the objection to this act, because it does not give the right to try the questions of damages to land-owners by a jury, cannot prevail.

The question remains as to the rule which should be applied in assessing the damages to land-owners under this act.

The actual damage caused to land by laying out a highway

through it is not limited to the value of that part which is taken and appropriated to the public use. What the public take is not simply the land covered by the road, but the right to make and maintain the road; and the injury to the whole tract may much exceed the value of the land actually taken. The land may be inconveniently divided, and additional fencing may be required. A just and fair compensation for the right taken would be the actual damage done to the whole land; such is the compensation which in equity the land-owner ought to receive, and which, we think, this act intends to give him. If the corporation cannot agree with the owners of land over which the road may be laid out, upon the amount of damages to be paid therefor, either party may apply to the Court of Common Pleas, and have the damages assessed. There is nothing in the language here used to indicate that the damages are to be limited to the mere value of the land taken, or to be extended beyond the injury done to the land through which the road may be laid out. The land-owner is to receive compensation for the damage done to the land through which the road is laid out. Damages are awarded to the land-owner as such; that is to say, for the injury done to his land, and not for any loss or damage that he may suffer incidentally from the operation of the road when completed. Such remote and consequential damages are not caused by the taking of the land for the road, but by the change which the public improvement introduces into the course of business; and for such damage the public is not bound to make compensation. Every man, when he embarks in any business, or makes any investment of property, must do it at the risk of such changes as time and the progress of the age may introduce. There is no undertaking on the part of the government to protect him against new competitions, whether caused by individual enterprize or by improvements conducted under public authority. The damages awarded to the land-owner are limited to the direct injury done to the land; and he cannot, as a land-owner, claim damages for a loss which he may suffer in his business by the operation of the road. There is great unanimity in the authorities on this point. *Common-*

*wealth* v. *Norfolk*, 5 Mass. 437; *Callender* v. *Marsh*, 1 Pick. 430; *Patterson* v. *Boston*, 20 Pick. 162; *Lansing* v. *Smith*, 8 Cowen 149; *Jacob* v. *Louisville*, 9 Dana 114; *Hollister* v. *The Union Co.*, 9 Conn. 436; *Clark* v. *Saybrook*, 21 Conn. 313; *Richardson* v. *The Railroad*, 25 Vt. 465; *Rogers* v. *The Railroad*, 35 Maine 319.

It is intimated in *Com.* v. *Norfolk*, 5 Mass. 437, that any benefit which the land-owner may derive from the road should be deducted from the amount of damage done to the land. But in this State we do not understand that any general advantage which the land-owner may derive from the road is to be considered to reduce his land damages. He has a right to share with others in the benefits of the public improvement, and no deduction is to be made from his damages on that account. If in this case it had been made to appear before the commissioners that the new road would be likely to cause a great increase in the amount of travelling, and in the business and profits of Mr. Thompson's hotel, such evidence could not be considered to reduce his claim for damage done to his land. On the other hand, if it should turn out that the public improvement, by causing a change in the course of business, or by introducing new methods of doing business, should occasion a loss to that in which a land-holder may have been engaged, he must bear that loss in common with others who are in a like situation. The circumstance that the public may require some interest in his private property to accomplish the public object, gives him no claim to indemnification for a loss not in any way caused by the taking of his property, but by the operation of the public improvement.

In this case the commissioners awarded damages to Mr. Thompson for the probable injury that his business of letting horses to carry travellers up the mountain, by his bridle path, would sustain from the competition occasioned by the building of a carriage way to the summit of the mountain; and in this we think they erred. The contemplated injury to his business was not a damage done to his land, nor caused by the laying out of the road through his land, but by the operation of the public improvement;

and would have been the same if the road had not touched his land.

There may have been circumstances of peculiar hardship in Mr. Thompson's case, but we are unable to discover anything that can relieve it from the operation of the general rule.

*The report must be recommitted.*