## State *v.* Boody.

A selectman is a " public officer," and may be " a receiver of public money "
within the intendment of chapter 257, section 7, General Statutes.

INDICTMENT, charging that Charles H. Boody, at New Durham, in said
county, on the tenth day of March, 1868, being then and there a pub-
lic officer and receiver of public money, to wit, a selectman of said
town of New Durham, did then and there, by virtue of his said office
of selectman as aforesaid, have, receive, and take into his possession
certain money to a large amount, to wit, to the amount of two hun-
dred and seventeen dollars, and of the value of two hundred and seven-
teen dollars, of the property and moneys of the said town of New
Durham, the same being public money ; and the said Charles H. Boody
the said money then and there did embezzle, and fraudulently convert
to his own use, contrary, &c. To this indictment the said Charles H.
Boody filed a general demurrer. It was agreed that the questions
arising in the foregoing case be reserved and transferred.

*Clark,* attorney-general, for the state.

*Briggs & Huse,* for the respondent.

I. The objection to the indictment is, it alleges that the respondent
was a public officer and *a receiver of public money,* to wit, *a selectman,*—
thus assuming what is not true, that a selectman is by virtue of his
office a receiver of public money. The duties of a selectman, as pre-
scribed by law, are, to manage all the prudential affairs of the town.
Sec. 2, ch. 37, Gen. Stats. They shall also perform the duties of town
treasurer, if none is chosen, and *within fourteen days,* if the town fail
to elect, shall appoint a treasurer, but may appoint one of their own
number. Secs. 4 and 6, ch. 37, Gen. Stats. There is nothing in the
statute prescribing their duties, which makes them receivers of public
money as selectmen. If under sec. 4 or 6 they should act as treas-
urers, they would be receivers of public money ; but not in their
capacity of selectmen, but as acting or actual treasurer of the town ;
and if funds passing into their hands under these circumstances were
embezzled, the indictment should allege that the offence was committed
by them as acting or actual treasurers, and not as selectmen. As
selectmen, they cannot be considered the *custodians of the public money*
of the town, or receivers of the public money, in contemplation of the
statute upon which the indictment is founded. The collector and the
treasurer of the town are the custodians of the town money, and are
required to give bonds. No bonds are required of selectmen. The
money of the town is raised by taxation, collected by the proper officer,
and paid by him, as directed in the warrant, to town, county, and state
treasurers, and paid out by orders of selectmen. This is the universal

practice in this state, so far as we know. It may be said that money raised for the support of schools passes directly into the hands of selectmen, and that as such they are the receivers of this money. Whose money is the school money? The indictment alleges that the money embezzled was the public money of New Durham. If it was the school money, it was not the money of New Durham. See *Tolman* v. *Marlborough*, 3 N. H. 59.

II. The indictment is void for uncertainty : " Offences must be fully and plainly, substantially and formally, described." Section 15, Bill of Rights. An indictment must contain a certain description of the crime of which the respondent is accused, and a statement of the facts which constitute it, so as to *identify the offence*. It should be so definite that the respondent may know what he has to answer, and thus be able to prepare his defence. It must state the facts of the crime with as much certainty as the nature of the case will admit. 1 Chitty Criminal Law 140, 188, 189 ; 1 Wharton Criminal Law 285, 299–304. It should be so definite that the respondent's conviction or acquittal may ensure his subsequent protection, and enable him to plead his previous acquittal or conviction in bar to any subsequent proceedings for the same offence. As to the certainty required, see Chitty Crim. Law, ch. 5 ; 2 Black. 306, note ; *State* v. *Gary*, 36 N. H. 259, and cases there cited. All these essentials are wanting in the indictment under consideration. It should have been stated *what money* was embezzled, of whom it was received, and in what way it came into the hands of the respondent. If it was borrowed for the town, the vote authorizing the selectmen to borrow should have been stated. It may be said that sec. 9 of ch. 25, Gen. Stats., obviates the necessity of this certainty. If so, this section must be regarded as in contravention of the bill of rights, section 15, before cited, and therefore inoperative.

FOSTER, J. The 257th chapter of the General Statutes relates to " Frauds and Embezzlements," and is so entitled. Its 7th section provides for the punishment of " any public officer, being a receiver of public money," who shall fraudulently convert the same to his own use. Its 8th section provides for the punishment of " any officer, agent, or servant of any corporation, public or private, or the clerk, agent, or servant of any person," who shall be guilty of a similar offence.

The indictment before us is founded upon one of these sections.

In the Revised Statutes, from which both sections were taken, the former is included in a chapter entitled " Offences against the State." It is chapter 213, section 4, and its terms are substantially the same as those of sec. 7, ch. 257, Gen. Stats. The other sections of the chapter in the Revised Statutes relate to treason and misprision of treason solely. Section 4 would seem, from this connection, to have had special reference to state officers,—that is, officers whose duties concern the state at large or the general public (see Dillon Mun. Corp., sec. 33), and not to officers of municipal corporations.

The Revised Statutes, unlike the General Statutes, contained no independent chapter or title relating to embezzlements; but they contained the provisions of sec. 8 of ch. 257, Gen. Stats., where they were applied exclusively to officers of banking corporations. Rev. Stats., ch. 140, secs. 40, 41.

Under the Revised Statutes, then, and until the enactment of the General Statutes, it would seem that a selectman could not be punished for embezzlement of town funds, unless by virtue of the provisions relating to a " receiver of public money," in the chapter of " offences against the state " already referred to, where the crimes of treason and embezzlement of public money are alone considered. But, by the terms of the General Statutes, ch. 257, sec. 8, the penalties prescribed for the embezzlement of bank funds, by officers of banks, were extended to " any officer, agent, or servant of any corporation, public or private; " and it would seem that, under this section, a selectman or any other town officer, or the general or special agent of any town, might be punished for the embezzlement of its funds, and that an indictment founded upon that section might be applied to a case like the present.

Doubtless it was for the purpose of curing this defect in the law that the restricted provision of secs. 40 and 41 of ch. 140, Rev. Stats., were " made general " by the commissioners in the revision of 1867. See Report of the Commissioners.

This application of the statute to the agent or servant of any corporation, public or private, fixes the liability of every town officer who shall embezzle the public funds. It is true that, in common legal parlance, towns are not usually spoken of as corporations, without the prefixed adjective " municipal." They are frequently spoken of as *quasi* corporations, and, by sec. 1, of ch. 133, Gen. Stats., the provisions of Title XVII, comprehending those ten chapters which are supposed to include all general legislation concerning corporations, do not apply to public municipal corporations, such as towns, cities, and the like.

But the terms of the statute relating to embezzlements are not restricted nor defined by the application and definitions of the provisions of Title XVII; and, as used in sec. 8 of ch. 258, Gen. Stats., the term " public corporation " may properly be applied to a town.

Of this there can be no doubt. Every municipal corporation is necessarily a public corporation. "All corporations, intended as agencies in the administration of civil government, are *public* as distinguished from private corporations. Thus, an incorporated school district or county, as well as a city, is a public corporation; but the school district or county, properly speaking, is not, while the city is, a *municipal* corporation. All municipal corporations are public bodies, created for civil or political purposes; but all civil, political, or public corporations are not, in the proper use of language, municipal corporations." Dillon Mun. Corp., sec. 10.

In this state, public corporations are understood to include all those which are created for public purposes, and whose property is devoted to the object for which they are created. Such, it is said, are counties,

towns, parishes, school districts, &c. Private corporations are those which are created for the immediate advantage of individuals. Such, it is said, are insurance and manufacturing companies, and such, also, are canals, turnpikes, toll-bridges, and railroads, although the uses of these latter are public. *Dartmouth College* v. *Woodward*, 1 N. H. 116, 117; *Eustis* v. *Parker*, 1 N. H. 275; *School District* v. *Blaisdell*, 6 N. H. 199; *Concord Railroad* v. *Greeley*, 17 N. H. 47; *Foster* v. *Lane*, 30 N. H. 305; *Petition of Mt. Washington Road Co.*, 35 N. H. 134.

It may not be entirely certain upon which of the two sections, 7 and 8, the public prosecutor relied in framing the indictment. He seems to have incorporated the language of both in the description of the official position of the respondent. He is called a public officer, and also a receiver of public money, to wit, a selectman; and he is charged with the embezzlement and fraudulent conversion of public money.

Omitting the superfluous and unnecessary words "and receiver of public money," the respondent is described as "a public officer, to wit, a selectman;" and such an officer is clearly included within the provisions of section 8; and, under that section, with proper averments in the indictment, the respondent would probably be chargeable.

But it seems more probable that the prosecuting officer intended, by the framing of his bill, to charge the respondent under section 7, since he has used, in his description of the offender, the terms a "public officer" and a "receiver of public money,—terms that are not employed in section 8, which applies in terms to "any officer, agent, or servant of any corporation, public or private." And we can have little doubt that the later compilers of the statutes, and the legislature of 1867, intended to enlarge the provisions of the Revised Statutes, ch. 213, sec. 4, by extending them to municipal corporate agents; not confining them to state officers. This is indicated by the collocation of sec. 7, ch. 257, Gen. Stats., which (while its phraseology is retained without modification) is extracted from the chapter entitled "Officers against the State" in the Revised Statutes, and where, as we have seen, it is associated with no other subjects than treason and misprision, and incorporated into the chapter entitled "Frauds and Embezzlements," where it becomes associated with kindred subjects, while the remainder of the chapter from which, as section 4, it is taken, is reënacted in the General Statutes under the title of "Treason and Misprision." Gen. Stats., ch. 265.

If, then, section 7 of ch. 257, Gen. Stats., may be applied, as we think it well may, to the servant or agent of a municipal corporation, the offender and the offence are described in this indictment fully and plainly, substantially and formally. It would be ridiculous to require the state to prove the precise source from which the precise money taken and converted was derived. The money in the officer's hands may have come from various sources, and have been so mingled and confused as that the portion thereof embezzled and converted could by no possibility be designated, such fund having no ear-mark.

.By the terms of the statute, any public officer, being a receiver of public money, who shall fraudulently convert the same to his own use, shall be punished.

By the terms of the indictment, the respondent is described as being a public officer and receiver of public money, to wit, a selectman, etc., and is charged with fraudulently converting to his own use a specified sum, being the property and money of the town, which, as selectman, he had received.

.The word "embezzle" is used in the indictment; but this may be rejected as surplusage, since it means no more than the offence, which is fully described by the use of other terms. See Bouv. Law Dic., Embezzlement.

Selectmen are not *ex officio* receivers of the public money of the town, but they are invested with the functions of a treasurer upon the failure of the town to elect such an officer. Gen. Stats., ch. 37, sec. 4. So, too, by special vote of a town, a selectman may be constituted the agent to the town to receive, as well as to hold and appropriate, the funds of the town—*Barnstead* v. *Walker*, Belknap, December term, 1872 ; and in such a case he would come under the statutory designation of "a public officer, being a receiver of public money."

Moreover, in certain cases (in one case at least) selectmen are specially constituted receivers of the town's money, as in Gen. Stats., ch. 53, sec. 8, where the collector is required to collect the taxes and pay the same "to the state and county treasurer, *and to the selectmen* or town treasurer."                    *Demurrer overruled.*