ADDEN *v.* WHITE MTS. N. H. RAILROAD.     { March 12, 1875.

In awarding damages to the owner of land taken for a railroad, the exposure of his remaining land and buildings to fire from the company's engines is a proper element to be considered in making the estimate.

The statute, which imposes upon railroad corporations an absolute liability for all damage caused by fires from their locomotives, does not necessarily preclude a recovery of anything for this cause; but the question is, How much will the property be diminished in value by reason of such exposure, considering at the same time the indemnity provided by the statute?

Benefits from the construction of a railroad, which the land-owner enjoys in common with the public generally, cannot be set off in reduction of his damages.

APPEAL from an award by the railroad commissioners and the selectmen of Northumberland of four hundred dollars for land damages.

The railroad was constructed over and across the appellant's land and in the vicinity of the track, and upon both sides of it was a growth of pine trees. The defendants contended that by the construction and operation of the railroad the appellant derived advantages for getting his lumber to market, which advantages should be taken into consideration in diminution of the damages sustained by the appellant. The court instructed the jury that they must not set off against the land-owner's individual damages any incidental and general advantages enjoyed by him in common with the public generally; but if, by reason of the construction of the railroad over his land, the land-owner derived special and peculiar advantages, these may be set off at what they are worth against his loss and disadvantages; that if, by reason of laying the road through his land, the land-owner is afforded peculiar facilities and advantages in respect to his growing pine trees, this advantage to him may be considered in estimating his damages. The track of the

railroad was located at a distance of about one hundred feet from the end of the appellant's house. In the closing argument of the plaintiff's counsel to the jury, he claimed that they ought to take into consideration the enhanced expense required to insure the house against fire by reason of its proximity to the railroad, and requested the court to charge the jury to that effect; but no testimony had been introduced on either side concerning the matter of insurance, nor did it appear whether or not the appellant's house was ever insured, nor whether or not the rates of insurance would be increased by reason of the construction of the railroad. The court refused this request, and charged the jury that since, by the provisions of the Gen. Stats., ch. 148, sec. 8, the proprietors of a railroad are made "liable for all damages which shall accrue to any person or property by fire or steam from any locomotive or other engine on such road," no damages in respect to this matter could be allowed. To these rulings and instructions the appellant excepted. The jury awarded as damages four hundred and fifty dollars.

Case reserved.

*Fletcher & Heywood*, for the plaintiff.

*Ray & Drew* (with whom was *Bingham*), for the defendants.

SMITH, J. The rule in regard to the assessment of damages for land taken for a public highway is well settled in this state. Nothing is to be deducted on account of benefits and advantages not peculiar to the owner of the land so taken, but which are general, and shared in by other land-owners in the vicinity. He is entitled to compensation, not only for the land actually taken, but for the damage to the whole tract through which the road passes,—which includes the diminished value of what is left. If the result of the construction of the highway is inevitably to raise the value of all the lands in the neighborhood, he is as much entitled to his share of the general advantages, without compensation, as others whose lands are not taken. To require him to offset such advantage against his damages for the taking of his land, would require him to bear a portion of the expense of the highway which should be borne by the public, and would be manifestly unequal. This rule is correct on principle, and is abundantly supported by authorities. *Carpenter* v. *Landaff*, 42 N. H. 218; *Petition of Mt. Washington Road Co.*, 35 N. H. 134. The same rule is also adopted in Massachusetts. *Meacham* v. *Fitchburg Railroad Co.*, 4 Cush. 291; *Upton* v. *South Reading Branch R. R.*, 8 Cush. 600; *Whitman* v. *Boston & Maine R. R.*, 3 Allen 133; S. C., 7 *ib.* 313;—also in other states. Redf. on Railw., 2d ed., *133, sec. ix, § 71, and authorities there cited.

This rule is equally applicable to a railway corporation as to a public highway. Railroad corporations are declared by statute to be public highways. Gen. Stats., ch. 146, secs. 1–3. A turnpike road is a pub-

lic highway, differing from free roads only in the manner of use. All citizens may use a turnpike by paying the established toll. *Backus* v. *Lebanon*, 11 N. H. 24, cited by PERLEY, C. J., in *Pet. of Mt. Washington Road Co.*, 35 N. H. 140, where it was held that "the power to take private property for public use may be exercised by the government through the means of a private corporation. The fact that the members have a pecuniary interest, such as will give it in law the character of a private corporation, will not prevent the state from using it to accomplish a public object."

In awarding full indemnity to the owner for land taken from him for public uses by authority of law, several elements are to be taken into the account. The diminished value of what is left is one very important fact. This diminished value may arise from several causes, such as the inconvenient separation of the track, rendering the buildings less commodious, interrupting the supplies of water for cattle or irrigation or household purposes, and the like—*Carpenter* v. *Landaff, ubi supra;* to which may be added the nearness of the track to the owner's buildings, the inconveniences caused thereby, and "the imminent and appreciable danger from fire," and the like. *Proprietors of Locks, &c.,* v. *Nashua & Lowell R. R.*, 10 Cush. 385; Redf. on Railw., 2d ed., *155, note 10, and authorities cited.

The law does not afford indemnity for all losses occasioned by the laying out and use of a railroad, especially for such damages as are remote and consequential. They are damages not caused by the taking of the land for the road, but by the change which the public improvement introduces into the course of business. It affords no protection against new competitions, nor against changes introduced by time and the progress of the age—*Pet. of Mt. Washington Road Co.*, 35 N. H. 146, and *Proprietors of Locks, &c.*, v. *Railroad*, 10 Cush. 389; nor does it afford relief against such inconveniences as "the whole community suffer alike, in a greater or less degree, and which are to be borne by the public in consideration of the greater public good to be acquired." *Ib.*, 391. But whatever tends directly and substantially to diminish the value of the tract of land left to the owner, who has been compelled to part with the possession of a portion thereof for the public good, should be weighed and considered in awarding him his damages. That imminent and appreciable danger from fire does so diminish the value of his property, there can be no question.

The defendants' road is located one hundred feet from the plaintiff's dwelling-house. It is unquestionably material for the jury to consider whether his damages are not greater with the tract one hundred feet distant, than they would be at a distance of one hundred rods. The location of the tract, and all such matters as grow out of and are caused by the location, are proper matters for the jury to consider.

It is claimed here by the defendants that the plaintiff is insured by the statute, which in case of loss makes the defendants liable to the plaintiff—Gen. Stats., ch. 148, sec. 8—and therefore that the element of the enhanced cost of insurance should not be considered in award-

ing his damages. But I think this does not follow. His buildings may never burn. If they do not, of course the railroad cannot be called on to pay. But is the plaintiff to go without insurance because the railroad is made liable? It is the part of prudence for one to keep well insured. Is the owner compelled to rely on the railroad? Suppose the road happens to be insolvent, as many railroads are: where would be his security? Suppose, in case of loss by fire of his buildings, the railroad contest their liability on the ground that the fire did not originate from their locomotives: it is often not only difficult, but impossible, to prove the origin of a fire. The liability of the railroad extends only to fires caused by their locomotives or engines. Gen. Stats., ch. 148, sec. 8.

It cannot be successfully contended that the owner is not entitled to insurance against fire which may happen from *any* cause; and if he is unable to obtain such insurance without paying a higher premium therefor because of the increased danger resulting from the proximity of the railroad track to his buildings, that surely must constitute an appreciable and serious detriment to the owner. The rate of insurance being increased operates proportionally to diminish the value of the rent and of the buildings. Redf. on Railw. *155, note 10.

It is no sufficient answer to say the owner might purchase a policy at the usual rate by agreeing to the insertion of a clause exempting the insurance company from liability is case of loss or damage by fire occasioned by the locomotives of the railroad company. To say nothing of the difficulty he might encounter in procuring such a policy, or of the mistakes and misunderstandings that would naturally ensue, it would very likely end in litigation, the railroad on the one hand denying their liability, and the insurance company on the other claiming that the fire originated from the railroad company's engines; and so the owner, in addition to having lost his property by fire, would be placed between two other fires where the result might prove equally disastrous.

By section 10, any insurance effected by the owner enures to the benefit of the railroad company in case of loss occasioned by them, so that the owner receives no advantage from his insurance in case of payment by the railroad company of his damages; and unless the company do pay, he has only been able to procure partial indemnity for his loss by paying an increased premium therefor. This section applies not only to the owner whose land has been taken in the construction of the road, but to any person whose property may be damaged by fire from the company's engines; and there would seem to be equal reason for claiming that no one whose property is located on the line of the road need protect it by insurance because the railroad is made liable in case of loss by fire from its engines, as to claim this in behalf of the owner whose land has been taken by the road in its construction. The danger of loss by fire communicated from the company's engines is only one of the many dangers from that source that threaten the owner's property; but owing to the proximity of the

track to his buildings, he cannot protect them from this source of danger except at a price enhanced in consequence of this act of the defendants.

That no evidence was laid before the jury upon the subject of insurance does not alter the aspect of the question. The jury were instructed that no damages on account of increased insurance should be allowed; and the only conclusion we can draw is, that none were allowed on that account. I think the instructions were erroneous upon this point.

The instructions in regard to any peculiar advantage which the plaintiff might acquire from the construction of the road seem to recognize as a fact, that the facility thereby afforded him for transporting his pine trees to market was in itself an advantage of that peculiar character that would require him to offset such advantage against his damages for the land taken. Giving a land-owner access to his land where he had none before would not ordinarily be considered a benefit for which he should pay, but rather in the light of a general improvement in which many would share. See *Carpenter* v. *Landaff*, *supra*, 224, where BELLOWS, J., remarked,—"It is true that there may be cases where a single land-owner would be furnished such access where none existed before; but ordinarily it would be otherwise, and the cases would be extremely rare when many were not benefited by improved means of access. Indeed, such a state of things could hardly be expected at all, unless in a case of a private road."

The fact that the road gave the plaintiff access to his trees was not in itself such a peculiar advantage as to require him to submit to a reduction of his damages on that account. It does not appear but what others in the vicinity, whose land was not taken, were benefited in the same manner if not to the same extent. The instructions were not sufficiently explicit upon this point.

For these reasons I think the verdict must be set aside.

CUSHING, C. J. The question is, whether by our law there can be any circumstances which ought to be taken into consideration showing some advantages derived by the proprietor, which ought to be set off against any portion of the damages to which the landholder would otherwise be entitled. There are certain cases which have been decided in which it has been intimated that such a state of facts might exist, but I do not think that principle has often, if at all, been made the basis of a judgment and a reason for the allowance of such set-off.

All the cases seem to recognize the principle, that no reduction of damages is to be made by reason of any benefit derived to the landholder, belonging to the same class of benefits as are shared in common by all the landholders in the vicinity. If there be any case for such set-off, it must be an exceptional one.

Now, it seems to me that if there be any class of benefits which is emphatically shared by all, it is that class which has its origin in increased facilities for transportation. One man is enabled to get his

pine timber to market, another opens his granite quarry, a third may have a large grass farm, and finds increased facility for taking his pressed hay to market. These facilities are greater or less in proportion to the proximity of the land to the railroad or the station, but they all belong to the same class. They all belong to the class of general benefits, which is open to all and shared alike by all.

I think therefore that the charge, in recognizing, as I think it does, that the fact of the pine timber existing on the line of railroad is exceptional and the benefits derived from it peculiar, was erroneous. It is true that in the end it would be a question of fact whether or not, under the existing circumstances, there was an exceptional benefit. But I think that lot of pine timber, standing near the track, was in itself no more exceptional than a turnip field or a grass meadow, and that the jury should have been so instructed.

It seems to me, also, that there was error in the instruction of the court in regard to the insurance. The fact that the buildings were near the railroad was before the jury, and that in itself was evidence from which they might form some judgment as to the risk of damage from the fire. It seems plain enough that the legal liability of the railroad corporation to indemnify against damages by fire from their engines was a very poor substitute for insurance. Seeking an indemnity from a railroad corporation, taking upon one's self the burden of showing that the loss was occasioned by fire from the engine and not by any of the other numerous means by which fire might be occasioned, is quite a different thing from seeking indemnity from an insurance company. The responsibility of railroad corporations, too, taking them one with another as railroad corporations exist in the country, is a very different thing from the responsibility of such an insurance company as the party may himself see fit to select. It was, therefore, a question of fact, which might well have been submitted to the jury, whether, under all the circumstances, the increased danger of fire from the engines could be so balanced by the liability of the corporation as to leave no diminution in the value of the property.

LADD, J. The land-owner is entitled to compensation for such damage as will result to him from the proper construction, maintenance, and operation of the road over the land taken for that use ; and I am of opinion that exposure of his remaining land, whether occupied by buildings or not, to fires by the company's engines, is a proper element to be considered in making the estimate. 1 Redf. Railw., ch. xi, secs. 74, 82, and cases in notes.

This being so, the question is, whether the statute imposing an absolute liability upon the company to pay all losses occasioned in that way necessarily covers the whole ground so as to leave nothing for estimation on that score ; and I think it does not.

Our statute on this subject is in effect identical with that of Massachusetts. In *Peirce* v. *W. & N. Railroad Co.*, 105 Mass. 199, COLT, J., says, —" It is plain that this indemnity [that furnished by the statute] is not

so perfect and complete as to preclude, in the estimate of damages, a consideration of the direct effect of a constant liability to destruction by fire from this new source upon the present value of a dwelling erected upon the remaining portion of the estate, as a safe and comfortable residence, or for purposes of sale. The present value of the property must be to some extent depreciated although there is a chance that the buildings may never be destroyed by fire, and although, if they are, it is certain that the owner, whoever he may be, will be indemnified under the statute for the actual loss he sustains. The injury to be measured in the assessment of damages occasioned by the location of the railroad, in this respect at least, is broader than the indemnity of the statute."

It is argued that the facts shown on the trial did not call for or warrant the instructions requested, inasmuch as there was no evidence as to insurance one way or the other. But the exception was to the instruction given, as well as to the refusal to give those requested; and I think the only just interpretation that can be put upon the case as reported is, that the jury and counsel, as well as the court, must have understood that no damages could be given on account of exposure to fire from this source by reason of the indemnity for actual loss furnished by the statute, to the provisions of which the attention of the jury was specially directed by the court. I think this was erroneous, and that this exposure was proper matter for consideration by the jury, of course under proper instructions as to making due allowance for the indemnity provided by the statute.

The general proposition given to the jury, as to special benefits to the land-owner arising from the construction of the railroad, were clearly correct; but I doubt the correctness of their application upon the facts reported. How do the facilities afforded the appellant with respect to his growing pine trees standing on land adjacent to the railroad, and the consequent benefit to him, differ in kind from the advantages and benefits enjoyed by all other owners of similar lands in the neighborhood? It seems to me at most a mere matter of degree, dependent upon the distance of such lands from a station or turn-out on the proposed road. If it had appeared that the company had constructed, or bound themselves to construct, a turn-out or side track for the special accommodation of the appellant in getting his pines to market, a different case would be presented. As it is, I am inclined to the opinion that this was not a case where the jury were authorized to make any deduction on account of supposed special benefit to the land-owner. See remarks of PERLEY, C. J., in *Pet. of Mt. Wash. Road Co.*, 35 N. H. 147.

*Verdict set aside.*