RANSON, ET UX. *v.* FUNKHOUSER, ET AL.

[No. 394, September Term, 1969.]

*Decided June 3, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY and SMITH, JJ.

*George W. Shadoan,* with whom was *Shadoan & Mack* on the brief, for appellants.

*Laidler B. Mackall,* with whom was *Hal C. B. Clagett* on the brief, for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

The appellant, Frederick Ranson, was driving his car

in Rockville when the car collided with another car which had failed to honor a stop sign. Ranson was gripping the steering wheel rigidly and the impact caused the wheel to turn to the left, twisting his arm and wrist. He was dazed and suffered back pain. After a few days the pain in the back subsided but his left wrist hurt. He had experienced soreness in that wrist several weeks before, after he hammered on his car's muffler with a ball peen hammer and thought the automobile accident had "aggravated" the preexisting "strain."

The wrist continued to hurt intensely and he sought medical aid from various doctors, finally going to Johns Hopkins where he thought he could receive the best orthopedic care. Dr. Gibson Packard of the orthopedic staff, a doctor of very high qualifications in the field, found a rare condition, avascular necrosis of the left navicular bone (death of the bone due to interruption or disturbance of the blood supply), and treated Ranson for that condition, which is called Epimen Preiser's disease.

Ranson sued the driver who had dishonored the stop sign. Judge Parker directed a verdict for Ranson on the issues of primary and contributory negligence, but thereafter directed a verdict for the defendant on the ground that Ranson had failed to establish a causal connection between the accident and the harm to his wrist. Judge Parker found that Dr. Packard's answers on cross-examination destroyed his flat testimony on direct examination that there was a causal connection.

We think Judge Parker erred. Dr. Packard detailed his findings as to and his treatments of Ranson, and said that to a reasonable medical certainty his opinion was that "the nature of the mechanism of the injury in the automobile accident is the most probable cause of the patient's developing avascular necrosis of the carpal navicular bone." Judge Parker asked the witness: "Is the competent producing cause of the injury the accident itself?" —to which the doctor replied: "I think we get in this area to my interpretation of the patient's description of the two episodes related to the wrist [the hammering

with the ball peen hammer and the automobile accident],
both of which produce symptoms * * *. It is my opinion
that a pounding type movement with the hammer is less
apt to produce a twisting type injury than an actual twist
on a steering wheel, and it is because of my feeling with
reference to this twisting type mechanism that I state
my opinion that the probabilities—the medical probabil-
ities are that the accident caused this problem." Judge
Parker asked: "To a reasonable degree of medical cer-
tainty?" Dr. Packard answered: "Yes, sir." "All right,
that's it," said Judge Parker, and he was then right.

On cross-examination Dr. Packard was asked various
questions as to whether the hammering prior to the acci-
dent had not caused the injury to the wrist, and gave his
answers as follows:

"Q. Now, isn't it a pretty tight choice between
deciding whether it was the impact as he
related to you that caused the condition you
found five months later, whether that was
the cause or whether it was caused by the
prior injury? It is not black and white; is
it? A. No.

"Q. And it could have been caused, I believe you
testified [on direct], by the prior injury
even in the absence of the accident? A. You
asked me if that were possible, and I said
yes, I thought that was possible.

"Q. As I recall your prior testimony [on direct],
you were asked if the condition you found
five months later could have happened in
view of the prior injury in the absence of
the accident, and you stated you could not
answer that question; is that right? A.
There is something confusing about the way
the question was asked.

* * *

"Q. As I understand your prior testimony,
you stated that you couldn't answer whether,

in view of the prior injury, whether the present condition of Mr. Ranson's left navicular bone would have resulted even without the accident; is that correct? A. I couldn't answer with reasonable medical certainty."

It was this series of answers, particularly the last, which led Judge Parker to find Dr. Packard's testimony to be his "speaking out of his mouth with two different versions," and therefore "the jury cannot be permitted to speculate as to which they believe."

We find that nothing in Dr. Packard's testimony can reasonably be read to nullify his flat and unequivocal opinion to a medical certainty on direct that the automobile accident was responsible for the condition of the wrist. We read the answers on cross to say that it was *possible* that the hammering could have caused the condition of the wrist if the accident had not occurred, but that he could not say with reasonable medical certainty the extent of that *possibility*. This view is confirmed by Dr. Packard's answers on redirect examination. In effect, he was asked whether, when he said it was possible for the hammering alone to have hurt the wrist, he was "using the term 'possibility' to connote any percentage chance * * *" and his answer was: "When I answered yes, I was stating that anything medically is possible; the difference between the possibility [that the hammering alone caused the harm] and the probability [that the accident caused the harm]."

There was probative evidence of causal connection and the jury should have been allowed to pass on that issue and on the amount of damages. *Walters v. Smith,* 222 Md. 62, 66; *Hughes v. Carter,* 236 Md. 484, 485-486.

> *Judgment reversed and case remanded for a new trial on the issue of causal connection and the amount of damages, costs to be paid by appellees.*