ALAN FEDDER ET UX. *v.* COMPONENT STRUCTURES CORPORATION ET AL.

[No. 79, September Term, 1974.]

*Decided November 18, 1974.*

The cause was argued before MENCHINE, MOORE and LOWE, JJ.

*Sheldon H. Braiterman* and *James D. Johnson* for appellants.

*Charles O. Fisher,* with whom were *Charles O. Fisher, Jr.* and *Walsh, Fisher & Gilmore* on the brief, for appellees.

Lowe, J., delivered the opinion of the Court.

Alan and Carol Fedder, appellants, sought to recover damages and to obtain other relief from Component Structures Corporation, Alan Bentley Glass and Craig W. Damon, Charles J. Miller, Inc., and Malcolm E. Hudkins in a suit demanding *Ejectment* and alleging *Violation of Easement* and *Trespass Quare Clausem Fregit.*[1]

The issues arose after the Fedders purchased a three acre tract of land on August 1, 1969, improved by a house and a barn, from Stone Haven, Inc.[2] Stone Haven reserved a fifty foot right-of-way across the property to a forty-two acre tract adjacent to the southwest portion of the Fedders' land. The right-of-way, described by metes and bounds, intersected the public way known as Mineral Hill Road and provided access to the forty-two acre tract. The course it took divided the Fedders' house from their barn.[3]

The non-use of the right-of-way for the next two years apparently obscured its existence for appellants until Stone Haven, Inc. sold the undeveloped forty-two acres to Component Structures Corporation. In May of 1971 Component commenced the improvement of the right-of-way to conform to the specifications required by Carroll County for roads to be dedicated to the County.

The right-of-way, now known as Snowden's Run Road, was originally laid out and later designated by stakes by

---

1. Mr. and Mrs. Fedder will be jointly referred to alternatively as "Fedders" or "appellants".

Component Structures Corporation, Alan Bentley Glass and Craig W. Damon will be collectively referred to as "Component"; Charles J. Miller, Inc. as "Miller"; and, Malcolm E. Hudkins as "Hudkins".

Among the defendants, Hudkins, who had been joined by Component through a third party action, received a judgment in his favor which was not appealed. Component and Miller, who received directed verdicts in their favor, are joined as appellees and both will be bound by this court's determination although Miller alone filed a brief. Textual references to appellees indicate Component and Miller, jointly.

2. In the subject deed, the grantor is variously referred to as Stone Haven, Inc. and Stonehaven, Inc.

3. We have appended a copy of the plat introduced showing the Fedders' land, their home and the right-of-way. The plat does not indicate the barn which was located on the south of the right-of-way.

Malcolm E. Hudkins who was brought into the suit by Component under a third party claim. The perimeters of the right-of-way were marked for Charles Miller, Inc., a road construction contractor, whom Component had hired to improve the right-of-way to County specifications.

As the construction proceeded the road equipment severed electric lines, sewer lines and waterlines which had been established under the right-of-way. The record does not disclose whether those lines were installed before or after the creation of the easement. In addition, the grading substantially altered the land elevation between the house and barns, and consequently, the course of surface water flow.

The trial was bifurcated by stipulation. On November 15, 1972 the three issues upon which the parties had agreed were decided against the appellants by Judge Edward O. Weant. The issues thus resolved were:

1.  Is Snowden's Run Road laid out in the right place on the property? The court decided it was.
2.  Did the Defendants wrongfully regrade and change the elevation on said land within the right-of-way area? The court decided they did not.
3.  Did the Defendants wrongfully convert a private easement to a public road? Again the court decided they did not.

One year later the second phase of the case was tried in the Circuit Court for Carroll County. Again Judge Weant presided, but on this occasion he presided over a jury. Prior to presentation of evidence, appellants prepared to amend their declaration to allege negligence in addition to the trespass count which alone remained after the preliminary decisions on the issues. The court denied that motion.

Appellants contend first, that the change of grade resulting from road construction was itself a violation of the easement; second, that Component was not entitled to

dedicate the road to Carroll County; third, and we feel most significantly, that the trial judge erred when he refused to permit evidence of any damage off the right-of-way if caused by appellees while working on the right-of-way. As their final contention, appellants assert that the court's denial of their motion to amend the declaration was an abuse of discretion.

To reach the key issue, we need first dispose of the assertion that the construction was in violation of the easement. Appellants argue that the easement was restricted to ingress and egress over the prescribed area, with no improvement rights. In support of this position, they point out that the language in the deed simply reserved a "right-of-way" without mention of its extent or use. Because contractual provisions for improvement rights were not reiterated, appellants would limit us to the words of the deed to determine the parties' intent and purpose.

While we agree that an easement acquired by an express grant depends for most part on the construction of the deed conveying it, where its purpose, use and extent are not readily discernible from that document, courts must give effect to the intention of the parties at the time the contract was made.[4] Such rule is elementary for the construction of contracts and is applicable to the construction of a grant of an easement. *Buckler v. Davis Sand and Gravel Corp.*, 221 Md. 532, 537.

The most dependable indicium of the parties' intentions is the language of the sales contract between Stone Haven, Inc., for whom the easement was reserved, and the Fedders:

"Seller to have option to create a right-of-way for future road. Said road to meet Carroll Co. Specs. as to width and location."

Although appellants correctly argue that the contract has "merged" into the deed as the latter was the final executed

---

4. The introduction of that disputed language in the contract was held admissible by the trial judge additionally because appellant had "opened the door" when he denied on direct examination that he had ever "orally or in writing" consented to this covered road going through his property.

instrument, that observation prevents our resort to the contract only where its terms are inconsistent with correlative terms in the deed. *Millison v. Fruchtman,* 214 Md. 515. We find no inconsistency here. The deed provided for a right-of-way but did not elaborate on its intended extent and use. The contract merely amplified that provision by indicating that what the parties contemplated was a right-of-way which would eventually be converted to a public road. It is an old and well established principle of law:

> " . . . that parol evidence may be given of collateral and independent facts, which tend to support a deed, provided it is not offered to vary the agreement and is consistent with the deed." *Creamer v. Stephenson,* 15 Md. 211, 222; *accord, Buckler, supra.*

When the simple language of the contract is considered in the surrounding circumstances — as it should be, *Desch v. Knox,* 253 Md. 307 — the intention of the parties becomes crystal clear. The contract provides for "a right-of-way for future road . . . ," and that the road shall meet "Carroll County Specs." The width of the right-of-way, when described in the easement is the minimum standard prescribed by Carroll County, fifty feet. The plat, incorporated by a reference in the deed shows the right-of-way widening considerably into a flange for easier turning access onto the public road to which it connects the corporate owner's retained property. That retained property, undeveloped and uninhabited at the time of execution of Fedders' deed obviously becomes developable only if the access road is improved to conform to the requirements of the County for new roads in such developments. Indeed, simple logic tells us that the road construction standards provided by the contract, *viz.,* "Carroll County Specs." (introduced by appellants as "Specifications for New County Roads" ) must have anticipated the eventual assumption of maintenance of that road by Carroll County.

It is significant that at no time have appellants denied the apparent intention for future improvement, nor do they

imply more limited intention. They hope to prevail, it seems by precluding our consideration of the evidence of intent by manipulating rules of construction.

Viewing the reservation of the fifty foot easement in light of the intention of the parties at the time, we hold the construction was within the intended extent of use of the easement. Generally, an owner of a right-of-way may prepare, maintain, improve, or repair the way in a manner and to an extent reasonably calculated to promote the purposes for which it was created. *See* Annot., 112 A.L.R. 1303; *see also* Annot., 10 A.L.R.3d 960 for rights of parcel owners of subdivided dominant tenements to use a pre-existing right-of-way.

We may summarily dispose of appellants' tangential issue that Component had no right to transfer its interest in the road to Carroll County because the County regulations required ownership of the fee. The County's relaxation of their requirements is a matter of County concern but not justiciable as to appellants so long as this transfer did not increase the burden placed upon the servient land beyond the intention of the parties. *Cf., Tong v. Feldman,* 152 Md. 398, 405. Appellants introduced no evidence to indicate any increased burden. Beyond that, we have indicated that the circumstances surrounding the reservation of the right-of-way including the reference to minimum specifications for new county roads, anticipated the County take-over.

We now reach the substance of appellants' complaints. Precisely, it is related to the refusal of the judge, at the trial of the trespass issue, to permit evidence of damages which appellees committed while on the right-of-way. The court confined appellants' proofs to damage which occurred when appellee left the easement and physically encroached on appellants' land.[5]

_____

5. "MR. BRAITERMAN: My proffer is that some of the damage to the barn was cone [sic] as a result of the equipment on the right-of-way. The right of way is the plaintiffs' property as well as the defendants' right to use it and when the equipment is on the right of way we should have the

Recognizing the proffers during the jury phase of the trial as somewhat disingenuous, we are nevertheless able to separate out two proposals of damage rather confusingly interwoven by appellants. One we find to be properly rejected, the other we hold should have been admitted.

That which was properly rejected related to the utility lines running underground across the right-of-way. When advised of the proposed construction appellants apparently removed a fence crossing the right-of-way but refused to remove the underground utility lines. Although advised of

---

right to show that as part of the damages to the barn off the right of way was caused by the use of the equipment.

COURT: No, —. .

MR. BRAITERMAN: On the right of way and how it affected the barn. And we have a line of testimony and I'd like to make a proffer for that.

COURT: You can't do that. Wait until I'm finished talking, but you can't do that if it happened on the right of way. Now if the pushing dirt while the bulldozer is on the right of way, shoved it on or ran into the barn or hit the barn it's all right but not because the bulldozer was over here and the barn was over here. You maintain some kind of average. That's the Court's ruling.

MR. BRAITERMAN: That whole line of questioning. Anything along the same line of questioning. In other words, the Court's ruling unless I can show damage to the barn by getting off the right of way we have no right to any recovery."

. . . .

"The proffer would be that we would ask the experts, civil engineer and builder, to testify what caused the damage to this barn. And they would testify that the damage came from the work done by the defendants in constructing the right of way. While they went off the right of way of necessity in doing some of the slope work they could never separate the damages out as to what was caused when they were off doing the slope work and on the right of way, with the heavy equipment. Mr. Fedder's testimony on the same subject, while they had some dirt pushed off the right of way, what was visible that he observed he couldn't separate the damage from what was off the right of way while they were on the right of way. And I understand from your Honor's prior rulings, which I think are incorrect, that anything done while they were physically on the right of way is not relevant in the suit we have today.

COURT: As I understand your pleadings, I think, that's my ruling so that it would not be admissible.

MR. BRAITERMAN: And then under the pleading if you put a bomb in the right of way and as long as they stayed in the right of way whatever was done outside the right of way by the bomb, I guess, we're not alleging that, your Honor, but I assume were we, if we could, that would still be outside your scope of the evidence.

COURT: Well there probably would be a way to get at it but your pleading wouldn't allow you to do that. Doesn't allow you to do it. That's my understanding anyway."

their existence, appellees chose to proceed with construction, apparently assuming the excavation would not reach them. After severing the lines, they subsequently repaired and replaced them. Appellants argue appellees were bound to remove the lines without interruption of service, or to cease any construction work which might endanger them at the point they crossed the right-of-way. We do not agree and hold that the trial judge properly rejected evidentiary proffers of damage resulting from severance of the lines.

> "The law is also established in Maryland that where anyone unlawfully obstructs an easement, a person whose rights are interfered with need not resort to an action at law for damages or a suit in equity for an injunction, but may abate the nuisance by removing the obstruction, provided that he does so in such a manner as not to disturb the public peace or to put innocent persons or their property in peril." *Maddran v. Mullendore,* 206 Md. 291, 299-300.

Appellants were aware of imminent road construction, as attested by their notice to appellees not to cross the utility lines with their equipment. Having recognized their lines operated as an obstruction to the right-of-way improvement, and having not acted to protect their interests by removal, we cannot see them in the position of "innocent persons or . . . property" imperiled.

We hold to the contrary as to proffers of damage to the barn.[6] In the initial trial, heard and decided by the same presiding judge, the following testimony was submitted through a neighboring builder as to his observations. These

---

**6.** In addition to a collapsed wall of the barn, and water innundation, appellants' opening statement added:

"And in the barn they raise show ponies in box stalls and they had one pregnant mare or one mare about to be pregnant, I'm not sure if it's a mare, they'll tell you anyway, but it's a lady horse that was gonna have babies."

observations were what appellants offered to prove through experts at the second phase of the case:

"Q. Did the road have any effect on the drainage?
A. Definitely."

There ensued an evidentiary colloquy after which the questioning proceeded.

"Q. What was the matter, you stated that the drainage was changed? Now on what facts do you base that statement? That you observed?
A. Well according to my observation the changing or the grading of the road definitely rechannelled water in the area of the barn, disrupting it.
Q. And what happened to the water after the rechannelling, where did it go?
A. It went in the direction of the barn.
Q. And prior to them building the road had you observed the barn?
A. It went around the barn.
Q. And are you able to give an expert opinion as to what happened as a result of this changing drainage to the barn?
MR. WHITEFORD: Objection.
COURT: Sustained. I don't think he's been qualified as an expert.
Q. What effect did the change of drainage that you observed have on the barn?
MR. WHITEFORD: Objection.
COURT: Oh, let him answer it.
A. Well can I make a statement?
COURT: Yes, go ahead.
A. *The barn had been there for Lord knows how long, a hundred years, and the wall was perfectly intact. After the grading of the road the barn wall fell down and the only conclusion I could possibly come to was that the grading of the road, the heavy equipment, vibration,*

*the changing of the water ways, have caused this barn wall to fall down. It's as simple as that. There's no earthly thing caused it except grading this road. There's no denying this.*

MR. WHITEFORD: I move to stike the answer, your Honor.

COURT: Yes. I'll strike the answer. Because it's liable to go the jury. I'm not worried about before the Court. I understand what he's talking about. That's a different proposition.

MR. BRAITERMAN: Your Honor, well really this is not in the evidence for the jury but for your Honor. Just for the questions before it. Can the question stay for that? Limited to that? With the understanding that it will not be evidence before the jury.

COURT: *I understand that the grading has changed the water course so it ran into the barn."* [Emphasis added].

The court was, or should have been, aware at the jury phase of the trial that when appellants proffered they would ask their experts what had caused the damage to the barn, they were alluding to evidence similar to that which was previously submitted on the issues and which the court expressly "understood" at the first phase trial, *i.e.*, "that the grading has changed the water course so it ran into the barn." If we assume appellees set in motion the forces of destruction in the form of altered surface water drainage, they became liable for its damage in trespass notwithstanding they were never shown to have physically left the confines of the right-of-way. *Rockland Bleach & Dye Works Co., Inc. v. H. J. Williams Corp., Inc.*, 242 Md. 375; *Whitehall Const. Co., Inc. v. Washington Sub. San. Comm.*, 165 F. Supp. 730 (D. Md.). The imprecision of the proffer coupled with the twelve month lapse between trial of issues and the jury phase readily account for the court's failure to separate and limit appellants to proving that which was permissible under the Third Count of their declaration

(Trespass). Nonetheless, we must reverse and remand to permit appellants to be put to their proofs of trespassory injury.

There remains an unanswered inquiry by appellants, *viz.*, whether or not the trial court abused its discretion in denying the appellants a right to amend. Our answer is emphatically in the negative.

After all issues were decided against appellants they waited a full year — until after jury roll call on the very day of trial — and orally submitted a motion for leave to amend. The amendment would have added "and/or negligence" to the trespass count, Count III. Appellants argue that the rule permitting amendments, Md. Rule 320, provides that " . . . leave to amend shall be freely granted to promote justice," and their amendment would promote justice. With that expression we find no fault, however, to have permitted an amendment at that stage of the proceeding would have been to interpret that directory provision to the prejudice of the defendants who had already waited two years to reach the final stages of the proceedings. Although we are uncertain how the proposed amendment would have assisted appellants had it been granted, appellees would then have been entitled to a reasonable continuance to respond and prepare a defense against this new assault. The right to amend is not a right *ex debito*, but is subject to the sound discretion of the trial court and will not be reviewed in the absence of abuse. *Dixon v. Carroll County*, 241 Md. 700; *Bowersock v. Bowersock*, 210 Md. 427; *cf. Crowe v. Houseworth*, No. 24, S. T. 1974 (Ct. App., filed Sept. 30, 1974). The detriment which would have resulted from a grant of the motion is ample justification for its denial.

We express no opinion on the likelihood of success of the proposed amendment nor the right to combine separate causes of action in a single count as objected by appellee. These are matters which would have been properly considered by the trial judge were leave to amend requested propitiously.

The argument propounded by appellee Miller, the

contractor, regarding the absence of any evidence of his participation is unpersuasive when viewed in light of the abrupt termination of the case in its initial stage. The orderly presentation of proofs had not been consummated. Appellants' first witness was cut off and the court precluded proof that *anyone* caused the rechanneling of the surface water. The appellants' proffer specifically stated that the experts would "testify that the damage came from the work done by defendants [plural] in constructing the right of way." It is our view that, as one of the "defendants," Miller was included in the proffer.

Although the issue and jury phases of the trial have been interrelated in our discussion, we find error only in the jury phase and specifically affirm the results of the trial on the issues. Upon careful review of the entire record, we find no error in that portion of the proceedings. The retrial will therefore be limited to the action in trespass.

> *Judgment reversed; case remanded for a new trial consistent with this opinion; costs to be paid by appellees.*

388

WIDENING BY CARROLL CO.

MINERAL HILL ROAD (EXIST 30 R/W)

S 21°40' E 64.95'

N 45°17'40" E 140.37'

N 68°26'20" E 245.80'

N 42°28'40" E 81.19'

MSL. N 45°17'40" E 52.15'

N 47°31'00" W 147.85

S 42°28'40" W 67.2'

N 47°31'00" W 185.00

S 50°30'40" W 356.92

S 19°54'30" E 232.71

BEGIN

30

40

DWLG

CONTAINING 3.00 ACRES MORE OR LESS

CONTAINING 0.516 ACRES±

30' R/W

PROPERTY TO BE CONVEYED
STONE-HAVEN, INC.
ELECT. DIST. #5 CARROLL CO. M
SCALE: 1"=100   7/21/69.

PHSS
EXHIBIT NO. 2
CASE # 19508 LAW
DATE 10-31-72
ACCEPTED BY

64

STATE OF MARYLAND LAND SURVEYOR