470 A.2d 840

**Wiley G. GRIFFITH, et ux.**

v.

**MONTGOMERY COUNTY, Maryland.**

**No. 501, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Feb. 6, 1984.

James A. Bonifant and William M. Canby, Rockville, with whom were Miller, Miller & Canby, Rockville, on the brief, for appellants.

Joseph M. Mott, Asst. County Atty., with whom were Paul A. McGuckian, County Atty., for Montgomery County, Robert G. Tobin, Deputy County Atty. for Montgomery County,

and Nathan J. Greenbaum, Sr., Asst. County Atty., for Montgomery County, on the brief, for appellee.

Argued before MOYLAN, LISS and WILNER, JJ.

LISS, Judge.

This is an appeal from a jury award of $65,000 to the appellants, Wiley G. Griffith and Carrie A. Griffith, in an eminent domain proceeding tried in the Circuit Court for Montgomery County. The appellee, Montgomery County, acquired 1.66 acres of the appellants' 39-acre farm for the construction of a road pursuant to the authority contained in Maryland Constitution, Art. III, Section 40A, and Montgomery County Code (1972, as amended), Section 49–50. The appellants challenge the exclusion of three claimed elements of consequential or severance damage by the trial court and the exclusion of an appraisal report done on a neighboring piece of property by one of the appellee's experts.

In May, 1980, the appellants were the owners of 39.4 acres of property that bordered on Maryland Route 108 on their north property line, and was bisected in a generally east-west direction by a 250-foot wide strip of land owned in fee simple by Potomac Electric Power Company (hereinafter Pepco). Within that strip Pepco had erected a series of twin 200-foot transmission towers supporting high voltage power lines. The Pepco strip was acquired by a 1957 deed between Pepco and the appellants' predecessors in title.

North of the appellants' property and across Maryland Route 108, Montgomery County had previously acquired several hundred acres of land for the construction of a landfill. Portions of the appellants' property were acquired to construct Fieldcrest Road, which was built in an east-west direction and connected Maryland Routes 124 and 108. The road was built with the intent that it would serve as part of the designated access route to the landfill. As much as possible, Fieldcrest Road was located within the 250-foot strip of land owned by Pepco. The Pepco land was obtained

by Montgomery County from Pepco in an unrelated transaction.

On May 14, 1980, following unsuccessful negotiations with the appellants, the appellee, in accordance with Article III, Section 40A of the Maryland Constitution and the enabling legislation in Section 49–50 of the Montgomery County Code, deposited the sum of $40,700 into the Registry of the Court and took immediate possession of the portions of the appellants' land necessary for the construction of Fieldcrest Road. A condemnation action was subsequently filed, and the trial took place on February 7 and 8, 1983.

Prior to the start of the trial, the appellee's counsel filed two motions for the purpose of excluding three of the appellants' claimed elements of consequential damage. The first motion requested that the appellants be precluded from introducing evidence regarding the impact, if any, on the appellants' remaining property due to the proximity of the landfill operation. The appellants' property was taken for a road and not for the landfill, and the court ruled that "the factor of the landfill cannot be used insofar as the damages are concerned." The other two factors for which the appellants sought compensation were for the loss of two purported easements that the appellants contended they enjoyed over the 250-foot strip owned by Pepco. Both interests were expressly created by the deed between Pepco and the immediately preceding owners of the property from whom Pepco acquired the 250-foot wide swath of land. The deed gave fee simple title to Pepco but "reserv[ed] to the Grantor(s), as the owner(s) of lands abutting the Property, and to the Grantor's successors in such ownership (A) the right and privilege to use the Property for agricultural purposes so long as such use does not interfere with any use of the Property which the Grantee its successors and assigns may at any time or times desire to make." The trial court denied the appellants' request for compensation for the loss of this agricultural use.

The appellants were also precluded from introducing into evidence their claim for $15,385.40 of additional costs they purportedly would incur in order to meet the grade of Fieldcrest Road, if and when the appellants ever construct a road connecting their two separate parcels. Appellants contended that this cost would not have been incurred had Fieldcrest Road not been constructed. The added construction and additional cost would take place at a point on Fieldcrest Road that was entirely within the property owned by Pepco. The entitlement to this additional compensation is, according to appellants, founded on the language in the deed whereby the grantors and their successors in ownership reserved ". . . the right and privilege to cross, at their own risk, the Property, using lanes and roads now established or which may hereafter be established."

The appellants' final argument is to the trial court's exclusion of an appraisal of a property adjacent to the appellants' property, which one of the County's expert appraisers had performed two years after the appraisal of the appellants' property. The evidence was offered as impeachment evidence challenging the expert's credibility. The trial court ruled that this extrinsic evidence was inadmissible because it was collateral to any of the issues in the proceeding and a proper foundation for this evidence had not been established.

Without being permitted to take the damages resulting from the whole project and the other damages into consideration, the appellants' two appraisers determined the just compensation due appellants as a result of the taking to be $200,000 and $129,000, respectively. Appellee's two appraisers determined the just compensation due to be $40,700 and $44,000, respectively. The case was then submitted to the jury, which returned a verdict in favor of appellants in the amount of $65,000.

Appellants then noted this appeal, raising the following issues to be determined by this Court:

1. Whether a property owner who has had a parcel of his property taken as part of a public project is entitled to consequential damages to his remainder flowing from the entire project?

2. Whether the trial court erred in refusing to permit the property owners to present evidence establishing consequential damages resulting from the taking in the form of increased development costs which the property owners will incur when they develop their property?

3. Whether the trial court erred in refusing to permit the property owners to present evidence establishing the value of an easement for agricultural purposes which was taken as part of the property condemned?

4. Whether the trial court erred in refusing to permit the property owners to present as evidence at trial an appraisal of adjacent property prepared by one of the appraisers for Montgomery County, Maryland?

1.

■ Maryland Code (1974, 1981 Repl.Vol.) Section 12–104b of the Real Property Article provides that a property owner who has had part of *his* tract taken is entitled to consequential damages "... by reason of the taking and of future use by the plaintiff of the part taken." (Emphasis supplied.) *See Stickell v. Mayor of Baltimore,* 252 Md. 464, 250 A.2d 541 (1969); *Duvall v. Potomac Electric Power Company,* 234 Md. 42, 197 A.2d 893 (1964). In determining just compensation for the tract actually taken, the depreciation to the remaining land and the use to which the taken part was put should be considered. *United States v. Grizzard,* 219 U.S. 180, 184, 31 S.Ct. 162, 163, 55 L.Ed. 165 (1911).

The Supreme Court later held that "just compensation ... to an owner ... does not include the diminution in value of the remainder, caused by the acquisition and use of adjoining lands of others for the same undertaking." *Campbell v. United States,* 266 U.S. 368, 372, 45 S.Ct. 115, 117, 69 L.Ed. 328 (1924).

Despite this statement, subsequent federal courts have interpreted *Campbell* to mean that the awarding of this type of consequential damage would be appropriate in certain situations. In *United States v. Pope and Talbott, Inc.,* 293 F.2d 822, 825 (1961), the Ninth Circuit Court of Appeals stated:

With reference to circumstances regarded as significant in *Campbell,* we note that here the land taken was indispensable to the dam project; the damages resulting to the remainder from the use of the land taken are inseparable from damages resulting to the remainder from the use of government land. Further, we note and regard as significant the fact that the land taken did not form an inconsequential part of the tract ultimately put to the damaging use. It was not only indispensable, its contribution to the project and to the damage produced by the project was substantial.

In the more recent case of *United States v. 15.65 Acres of Land,* 689 F.2d 1329 (9th Cir.1982), the same Court expressly followed the interpretation of *Campbell* presented in *Pope and Talbott, Inc.* The Court stated that the owner could recover this type of consequential damages if the property owner can establish that his property was indispensable to the overall project, that the use put to his property taken was a substantial part of the overall project, and that the damages flowing from the overall project cannot be separated between the use put to the property taken from the property owner and the use put to abutting property taken. 689 F.2d at 1332.

The Maryland Court of Appeals encountered this same issue in *Johnson v. Consolidated Gas, Electric Light & Power Company of Baltimore,* 187 Md. 454, 50 A.2d 918 (1947). In *Johnson,* a portion of appellants' land was taken for a right-of-way by a local utility. Transmission towers and electric power lines were placed within the right-of-way. Appellants contended that the severance damage to their remaining property was not limited to consideration of those portions of the improvements placed on their property.

They argued that since the entire transmission line was a single unit they were entitled to damages arising from the construction of the proposed transmission line across the property of others because their property would be damaged by the sight of the line on the property of others. The Court held that the appellants were *not* entitled to damages by reason of the taking and use of abutting property. 187 Md. at 470, 50 A.2d 918. The Court concluded that "[i]n the instant case, as in the case of *Campbell v. United States of America, supra,* the damages resulting to the remainder of the land not taken were separable from those caused by the use to be made by the land acquired from others. . . ." *Id.,* at 473, 50 A.2d 918.

We conclude, in light of the cases previously cited, that the trial court was correct in excluding the impact of the landfill without conducting an evidentiary hearing. It was obvious that there was a basic difference between the two projects here under consideration; one was a condemnation for the creation of a road, the other for the establishment of a landfill. While it was obvious that the establishment of the road was useful in conjunction with the use of the landfill, it was also clear that the use of appellants' property was segregable from that to which the property of their neighbors was being put. This is precisely the distinction established by Section 12–104(b) of the Real Property Article. The property owner receives "severance or resulting damages to the remaining land by reason of the taking and future use by the plaintiff of the part taken." *Potomac Electric & Power Company v. Smith,* 37 Md.App. 640, 378 A.2d 715 (1977). In the instant case, the appellants' land was used to construct a road and its use for that purpose is readily separated from the use of other properties utilized as a landfill. *In United States v. Pope and Talbot, supra,* and *United States v. 15.65 Acres of Land, supra,* the cases were determined on the question of whether damages were capable of being separated. In those cases, the portion of the property owner's land appropriated was put to the same use as the neighboring lands. This was not the case in the

proceeding presently before us. The appropriation of appellants' land for use as a road is clearly differentiated from the land taken for the purposes of use as a landfill, and the damages resulting from each are clearly separable. We perceive no error.

## 2.

Appellants next contend that it was error for the trial court to preclude the introduction into evidence their claim for $15,385.40 of costs which they would incur if appellants were to build a road across the Pepco property and Fieldcrest Road to connect their two parcels of land. The cost represents the charges appellants would incur in bringing a connecting road to the grade of Fieldcrest Road at a point where that road is within the 250-foot Pepco strip on either side.

In the deed dated October 10, 1957, the grantors reserved to themselves, "and to the Grantor's successors in such ownership . . . the right and privilege to cross, at their own risk, the Property using lanes and roads now established or which may hereafter be established at locations agreed to by the Grantee, its successors or assigns (it being understood that there shall always be at least one such point of crossing over the Property)." It is the appellee's position that the language of this reservation precludes the appellants from recovering this item of claimed damage. Alternatively, if compensation is not expressly prohibited by the terms of the reservation then the appellee's use of the servient estate does not rise to the level of a compensable taking requiring the payment of damages.

Appellants argue that the deed created an easement by express reservation or grant and the extent of the rights granted depend upon a proper construction of the conveyance or that part of it by which it was created. *Desch v. Knox,* 253 Md. 307, 252 A.2d 815 (1969); *Fedder v. Component Structures Corporation,* 23 Md.App. 375, 329 A.2d 56 (1974).

■ A review of the language creating the grant does not indicate that the grantee or its successors, here the appellee, became obligated to bear any of the cost of constructing a lane or road across the Pepco land. To the contrary, it indicates that the appellants or their successors and assigns are permitted to cross the strip at their own risk. At the trial level, the appellee argued that "at their own risk" meant that this term should be construed to include monetary risk as well as personal injury risk. In the absence of any extraneous circumstances to indicate or suggest that the servient estate might thereafter be burdened to a greater extent than that expressed in the grant of the easement, the unambiguous terms and words of the instrument granting it must be given their plain and ordinary meaning. *Buckler v. Davis Sand and Gravel Corporation*, 221 Md. 532, 158 A.2d 319 (1960). Such an expressed grant should always be strictly, and not liberally, construed. *Id.*

■ The authorities hold that a right-of-way similar to the one here created is a right of passage and may be used by the owners of the land for any purpose which does not unreasonably interfere with the use of the easement. *Bishields v. Campbell*, 200 Md. 622, 91 A.2d 922 (1952). The property here involved was acquired by deed by the appellee from Pepco. It remains subject to the easement and the holder of the easement may recover damages or seek injunctive relief for interference with or obstruction of the easement. The interference or obstruction must be of such a material character as to interfere with the reasonable enjoyment of the easement. *Greenwalt v. McCardell*, 178 Md. 132, 12 A.2d 522 (1940). We conclude that appellants are not entitled to compensation because there has been no compensable taking.

■ While the right of access to property ordinarily cannot be taken away without due compensation, *Arnold v. Prince George's County*, 270 Md. 285, 311 A.2d 223 (1973), an adjoining owner is not entitled to compensation where his right of access to a street or highway is not taken away but

is only made more inconvenient. *Turner v. State Roads Commission,* 213 Md. 428, 132 A.2d 455 (1957). When the inconvenient access is to a new highway which does not replace an existing road there is no entitlement of compensation. *See D'Arago v. State Roads Commission,* 228 Md. 490, 180 A.2d 488 (1962).

Finally, on this issue, we note that the damages here sought to be proven were speculative in nature since there was no proffer that the connecting road was to be constructed in the reasonably foreseeable future.

### 3.

Appellants assign as error the ruling by the trial court precluding the appellants from introducing evidence on the value of the loss of agricultural use within the Pepco strip of land that abutted their property. The language creating the right vested in Pepco a fee simple title to the 250-foot wide strip while "reserving to the Grantor(s), as the owner(s) of lands abutting the Property and to the Grantor's successors in such ownership (A) the right and privilege to use the Property for agricultural purposes so long as such use does not interfere with any use of the Property which the Grantee, its successors and assigns may at any time or times desire to make." Appellants contend this created an easement. Appellee argues just as strenuously that it created merely a license or revocable privilege to enter upon the lands of the licensor, Pepco.

The trial court granted appellee's motion *in limine* precluding the appellants from presenting "any evidence relating to the loss in incremental value to the proposed lots on the defendant's proposed subdivision plan due to the loss of the abutting Pepco property," and restricted the appellants from presenting any evidence which would establish "the value of the agricultural easement." This ruling was reaffirmed at trial.

In effect, this decision amounted to a determination that the right granted was a revocable license. We do not agree. In *Condry v. Laurie,* 184 Md. 317, 41 A.2d 66 (1945), the

Court of Appeals explained the distinction between an easement and a license as being that a license is a mere personal privilege which ceases with the death of either party. The Court stated:

> The distinction between an easement and a mere license to use land is clear. While an easement implies an interest in land, a license is merely a personal privilege to do some particular act or series of acts on land without possessing any estate or interest therein. *Shipley v. Fink,* 102 Md. 219, 226, 62 A. 360; *McClintic-Marshall Co. v. Ford Motor Co.,* 254 Mich. 305, 236 N.W. 792, 77 A.L.R. 807, 812. In *De Haro v. United States,* 5 Wall. 599, 627, 18 L.Ed. 681, 688, Justice Davis spoke of the incidents of a license as follows: "It is an authority to do a lawful act, which, without it, would be unlawful, and while it remains unrevoked is a justification for the acts which it authorizes to be done. It ceases with the death of either party, and cannot be transferred or alienated by the licensee, because it is a personal matter, and is limited to the original parties to it." [184 Md. at 320, 41 A.2d 66].

We note that the provision of the deed granting the agricultural use specifically stated that ". . . it being understood that if said abutting lands are at any time or times divided into two or more tracts in different ownerships, then said right of agricultural use shall be divided among said tracts in proportion to their respective frontages on the Property."

It seems clear to us that the parties intended to create an easement which would pass to their successors in interest. It is this agricultural easement which was taken by the appellee under its power of eminent domain and for which appellants must be justly compensated. The trial court should have permitted the appellants' appraisers to testify concerning the decrease in value of the lots with the agricultural easement intact and the value of the lots after the taking of the agricultural easement. We shall reverse the judgment and remand for the purpose of a new trial.

4.

Appellants, at trial, sought to introduce an appraisal, made by one of the appellee's appraisers, of property being taken by the Maryland-National Capital Park and Planning Commission. The property abutted appellants' property to the southeast. The reason for the proffer was appellants' effort to rebut the appellee's appraisal by comparing the appraisal of the adjacent property for the property owner under threat of condemnation and his appraisal of appellants' property for a condemning authority. The court refused to admit this evidence of the appraisal on the basis that it was "collateral" to the issue in the case before the jury.

While we are doubtful that this evidence may be properly classified as "collateral" we are convinced that the trial court's ruling was well within the court's discretionary power. The evidence was offered not for the purpose of establishing comparable sales or value, nor was it offered as rebuttal evidence. It was actually extrinsic evidence offered for the purposes of impeachment intending to affect the credibility of the County appraiser.

■■■ Rebuttal testimony has been defined as any competent evidence which explains or is in direct reply to a contradiction of material evidence introduced by the plaintiff in a civil action. *See, e.g., State v. Heppel,* 279 Md. 265, 368 A.2d 445 (1977); *Riffey v. Tonder,* 36 Md.App. 633, 375 A.2d 1138 (1977). It is clear that an expert witness may be cross-examined for the purposes of testing and inquiring into the basis for his opinion. *See Ranson v. Funkhouser,* 258 Md. 346, 265 A.2d 863 (1970); *Brinsfield v. City of Baltimore,* 236 Md. 66, 202 A.2d 335 (1964).

■■■ On cross-examination, a witness may be questioned as to prior inconsistent statements which are inconsistent with or contradictory to the witness's testimony in chief. *Williams v. Graff,* 194 Md. 516, 71 A.2d 450 (1950); *Robeson v. State,* 39 Md.App. 365, 386 A.2d 795, *aff'd,* 285 Md. 498, 403 A.2d 1221 (1979).

■■■ Before a witness may be impeached by an inconsistent statement, the proper foundation must first be laid. *State v. Kidd,* 281 Md. 32, 375 A.2d 1105 (1977); *Devan v. State,* 17 Md.App. 182, 300 A.2d 705 (1973). Where, as here, the witness has attempted to be impeached by inconsistent statements made in writing by him, he must be shown the writing and be questioned as to its authorship, *Lockhart v. State,* 145 Md. 602, 125 A. 829 (1924), so that the witness will have an opportunity for explanation. *Campbell v. Patton,* 227 Md. 125, 175 A.2d 761 (1961). But establishing the proper foundation for the admission of the extrinsic evidence does not end there. Where a witness admits making a prior statement inconsistent with a statement at the trial, that generally ends the inquiry and further evidence of the inconsistent statement should not be permitted to be introduced. *Bruce v. State,* 218 Md. 87, 145 A.2d 428 (1958). It is only where the witness denies making the particular statement, or does not recall making it, that extrinsic evidence of the prior contradictory statement is admissible. *Bruce v. State, supra; Moxley v. State,* 205 Md. 507, 109 A.2d 370 (1954). But even then the testimony must not be on an irrelevant or immaterial matter. *Poole v. State,* 290 Md. 114, 428 A.2d 434 (1981); *Joppy v. Hopkins,* 231 Md. 52, 188 A.2d 545 (1963). Impeaching evidence of inconsistent statements must pertain to the testimony sought to be impeached. *Kuenne v. Kuenne,* 219 Md. 101, 148 A.2d 448 (1959).

■■■ Our own review of the record convinces us that a proper foundation was not laid for the introduction of the appraisal as extrinsic evidence. Initially, the witness denied authorship of the appraisal and it was not established that this denial was incorrect. Nowhere in the record is the authorship of the document established.

The two purposes for which appellants claim they were attempting to introduce the report—showing that the appraiser relied on a development plan and that there was a higher per acreage value assigned to the neighboring parcel

than to the appellants' property—were both explained by the witness. The expert witness, Mr. Roland, stated that he did not rely on the development plan in appraising the neighboring piece, but that he appraised it on acreage.

On the question of the valuing of the neighboring appraisal priced at a higher value per acre, the expert, Mr. Roland, admitted that he appraised the land at a higher value per acre, and explained that that was two years after the appraisal that he did for the appellants' property. Those admissions should have prevented the introduction of any extrinsic evidence.

It is significant that the extrinsic evidence was not offered while the witness was on the stand. It was not until after the witness had been dismissed and on the following day that appellants sought to have the extrinsic evidence admitted through another witness. There was no showing of a contradiction or inconsistency in the witness's testimony and in the absence of such showing the evidence could not be admitted to impeach a witness. *Dorsey Bros., Inc. v. Anderson,* 264 Md. 446, 287 A.2d 270 (1972); *Niemoth v. State,* 160 Md. 544, 154 A. 66 (1931). Under the circumstances in this case, we conclude no proper foundation was laid and the trial court committed no error in not admitting the appraisal.

JUDGMENT REVERSED AND CASE REMANDED FOR A NEW TRIAL IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.