Hillsborough-northern judicial district
No. 2001-558

CITY OF MANCHESTER

v.

AIRPARK BUSINESS CENTER CONDOMINIUM UNIT
OWNERS' ASSOCIATION & a.

Submitted: July 24, 2002
Opinion Issued: October 29, 2002

*City Solicitor's Office*, of Manchester (*Daniel D. Muller, Jr.* on the brief and orally), for the plaintiff.

*Barto and Puffer, P.A.*, of Concord (*Mark H. Puffer* on the brief and orally), for the defendants.

*Philip T. McLaughlin*, attorney general (*Mark P. Hodgdon*, senior assistant attorney general, on the brief), for the State, as *amicus curiae*.

DALIANIS, J. In this eminent domain case, the defendants, Airpark Business Center Condominium Unit Owners' Association, New Oxford Realty Trust, and Harvey Road Airpark, L.L.C., appeal an order of the Superior Court (*Lynn*, J.) precluding them from seeking damages caused by the extension of an airport runway. We affirm.

The record discloses the following facts. The defendants own land improved with commercial condominium units on Harvey Road in Manchester. The plaintiff, City of Manchester (city), owns and operates the Manchester Airport (airport). As part of an airport expansion project, the city extended runway 6-24 approximately 2,000 feet, crossing over a portion of Harvey Road. As a result, the city condemned 0.08 acres of the defendants' property located at 340-400 Harvey Road for the purpose of relocating the road. Runway 6-24 is now approximately 300 feet from the defendants' property.

In April 1999, the city filed a declaration of taking with the New Hampshire Board of Tax and Land Appeals (BTLA). It subsequently appealed the BTLA's decision to the superior court, filing a petition to

reassess damages pursuant to RSA 498-A:27 (1997). Prior to trial, the city filed a motion *in limine* to preclude the defendants from introducing evidence of damages caused by the extension of runway 6-24. The court granted the motion, reasoning that the defendants could not be compensated for damages resulting from the city's use of adjoining property, not owned by the defendants, to extend the runway. This appeal followed.

While our State Constitution does not expressly mandate that compensation be given to landowners when their property is taken for public uses, we have construed the constitution, "in view of the spirit and tenor of the whole instrument, as prohibiting such taking without compensation." *Sibson v. State*, 111 N.H. 305, 306-07 (1971) (quotations omitted); *see* N.H. CONST. pt. I, art. 12. However, "[u]nless there is a taking, the government is not required to compensate a landowner even though its actions affect the value of his land." *United States v. 15.65 Acres of Land, Etc.*, 689 F.2d 1329, 1331 (9th Cir. 1982), *cert. denied*, 460 U.S. 1041 (1983). In New Hampshire, the owner of condemned property is entitled to damages based upon the difference between the property's fair market value before and after the taking. *State v. 3M Nat'l Advertising Co.*, 139 N.H. 360, 362 (1995). In the context of a partial taking, the property owner is entitled to not only the fair market value of the property actually taken, but also compensation for the effect of the taking, if any, on the entire property. *O.K. Fairbanks Co. v. State*, 108 N.H. 248, 250 (1967); *Edgcomb Steel Co. v. State*, 100 N.H. 480, 486-87 (1957). This form of compensation is known as severance damages. *Fairbanks*, 108 N.H. at 250. We are mindful, however, that just compensation "is for the property, and not to the owner." *Appeal of The Ribblesdale, Inc.*, 128 N.H. 370, 371 (1986) (quotation omitted).

There is no dispute in this case that there was a taking of the defendants' property, and that they are entitled to compensation, including severance damages. The question before us is whether the defendants are entitled to severance damages for the claimed diminution in value to their land resulting from the city's extension of runway 6-24 upon adjoining lands not owned by the defendants.

Because this question is one of first impression in this State, we look to cases from foreign jurisdictions for guidance. In this case, however, we look no further than the seminal case of *Campbell v. United States*, 266 U.S. 368 (1924), in which the Court held that "just compensation . . . to an owner, a part of whose land is taken for a public use, does not include diminution in value of the remainder caused by the acquisition and use of

adjoining lands [not owned by the landowner] for the same undertaking." *Id.* at 372. In *Campbell*, the United States condemned a small portion of the plaintiff's property, along with other parties' properties, to construct a nitrate plant facility. *See Campbell*, 266 U.S. at 370. No part of the actual nitrate plant was constructed on the plaintiff's condemned property. *See id.* In denying the plaintiff's claim for severance damages to his property caused by the government's construction of the plant on adjoining lands, the Court reasoned that:

> The land taken from the plaintiff was not shown to be indispensable to the construction of the nitrate plant or to the proposed use of the other lands acquired by the United States. The damages resulting to the remainder from the taking of a part were separable from those caused by the use to be made of the lands acquired from others. The proposed use of the lands taken from others did not constitute a taking of his property. Plaintiff had no right to prevent the taking and use of the lands of others; and the exertion by the United States of the power of eminent domain did not deprive him of any right in respect of such lands. And, if the land taken from [the] plaintiff had belonged to another, or if it had not been deemed part and parcel of his estate, he would not have been entitled to anything on account of the diminution in value of his estate. It is only because of the taking of a part of his land that he became entitled to any damages resulting to the rest. In the absence of a taking, the provision of the Fifth Amendment giving just compensation does not apply.

*Id.* at 371. The *Campbell* rule has received overwhelming acceptance and application by both federal and state courts alike. *See, e.g., 15.65 Acres of Land, Etc.*, 689 F.2d at 1332; *United States v. Kooperman*, 263 F.2d 331, 332 (2d Cir. 1959); *Interstate Northborough v. State*, 66 S.W.3d 213, 219 (Tex. 2001); *City of Albuquerque v. Westland Devel.*, 909 P.2d 25, 31 (N.M. Ct. App. 1995); *Utah Dept. of Transp. v. D'Ambrosio*, 743 P.2d 1220, 1222 (Utah 1987); Annotation, *Compensation for Diminution in Value of the Remainder of Property Resulting from Taking or Use of Adjoining Land of Others for the Same Undertaking*, 59 A.L.R.3D 488, 499 (1974).

■A number of courts have developed an exception to the *Campbell* rule. This exception provides that a landowner may recover damages to the remainder of his property when the owner can establish that "his property was indispensable to the overall project, that the use put to his

property taken was a substantial part of the overall project, and that the damages flowing from the overall project cannot be separated between the use put to the property taken from the property owner and the use put to abutting property taken." *Griffith v. Montgomery County*, 470 A.2d 840, 844 (Md. Ct. Spec. App. 1984), *cert. denied*, 469 U.S. 1191 (1985); *see also 15.65 Acres of Land, Etc.*, 689 F.2d at 1332; *United States v. Pope & Talbot, Inc.*, 293 F.2d 822, 825 (9th Cir. 1961); *Interstate Northborough*, 66 S.W.3d at 219. Consequently, to avoid the application of the *Campbell* rule, the landowner must establish the three elements of indispensability, substantiality and inseparability. *See 15.65 Acres of Land, Etc.*, 689 F.2d at 1332. We hold that, under New Hampshire law, the elements of indispensability, substantiality and inseparability must be demonstrated to avoid application of *Campbell*.

*Griffith v. Montgomery County* is instructive concerning the interrelationship between the *Campbell* rule and this exception. In *Griffith*, the court held that landowners could not be compensated for the reduction in value to their land resulting from the use of adjoining lands for a landfill, even though a portion of their property was taken to build an access road to the landfill. *Griffith*, 470 A.2d at 845. In its decision, the court relied upon the *Campbell* rule, stating that the landowners were not entitled to compensation under the exception because the damages were not inseparable. *See id.* at 844-45. The court reasoned that:

> It was obvious that there was a basic difference between the two projects here under consideration; one was a condemnation for the creation of a road, the other for the establishment of a landfill. While it was obvious that the establishment of the road was useful in conjunction with the use of the landfill, it was also clear that the use of appellants' property was segregable from that to which the property of their neighbor was being put. . . . In the instant case, the appellants' land was used to construct a road and its use for that purpose is readily separated from the use of other properties utilized as a landfill. In *United States v. Pope and Talbot*, [293 F.2d 822], and *United States v. 15.65 Acres of Land*, [689 F.2d 1329], the cases were determined on the question of whether damages were capable of being separated. In those cases, the portion of the property owner's land appropriated was put to the same use as the neighboring lands. This was not the case in the proceeding presently before us. The appropriation of appellants' land for use as a road is clearly differentiated from the land taken for the purposes of

use as a landfill, and the damages resulting from each are clearly separable.

*Id.* at 845.

We find the rationale underlying *Griffith* applies to the present case and agree with the trial court that this case falls under the *Campbell* rule. As in *Griffith*, there were two distinct projects under consideration in this case, one for the extension of runway 6-24 and the other to relocate a portion of Harvey Road. The appropriation of the defendants' land is clearly differentiated from the land taken for the purposes of expanding an airport runway. While we agree that the relocation of Harvey Road was related to the runway project, the use of the defendants' property was segregable from that to which the adjoining lands were put, as no part of the defendants' property was utilized for the operation of the airport. We agree with the trial court that damages caused by traffic along the defendants' condemned property are separable from damages caused by the proximity of the defendants' land to runway 6-24. Contrary to the defendants' contention, severance damages are not awarded based upon the proximity of the landowners' property to the public project. *See, e.g., Utah Dept. of Transp. v. D'Ambrosio*, 743 P.2d at 1222; *Lee County v. Exchange Nat. Bank of Tampa*, 417 So. 2d 268, 271-72 (Fla. Dist. Ct. App. 1982). "While the value of [their] entire property may have been greatly reduced by virtue of the [extension] of the nearby airport [runway], the [defendants] could make no claim for severance damages if the [city] had not chosen to condemn any of [their] property." *Lee County*, 417 So. 2d at 271.

We also disagree with the defendants' assertion that, absent an independent need or utility for relocating Harvey Road, they are entitled to severance damages arising from the runway project because Harvey Road would not have been relocated otherwise. As we have illustrated, the relationship between the runway project and the road relocation project is immaterial to determining compensation where the damages are clearly separable.

Moreover, it was not necessary to take any of the defendants' property in order to expand runway 6-24. At the hearing, the city maintained that it could have extended runway 6-24 without taking any of the defendants' property. It explained that relocating Harvey Road was the optimal design for the area, but that its relocation was not the only possibility. Rather, the city could have, for example, extended the road further or simply created a cul-de-sac. The defendants' property was, therefore, not indispensable to the extension of runway 6-24. Finally, that the city: 1) condemned 0.08

acres of the defendants' property; and 2) did not use any of the defendants' property for the extension of runway 6-24, establishes that the taking of that land was not a substantial part of the overall project.

The defendants argue nonetheless that *Pack v. Boyer*, 438 S.W.2d 754 (Tenn. 1969), controls our decision. In *Pack*, the Tennessee Supreme Court held that landowners could be compensated for the reduction in value to their remaining land resulting from the use of adjoining lands for a highway overpass embankment, where the landowners' condemned property was used to build an access road to the overpass. *See id.* at 759-60. The court did not, however, consider the *Campbell* rule or the exception when making its ruling, but rather decided the case upon its facts. *See id.* at 760. For this reason, we find *Pack* inapposite. Moreover, *Pack* is factually distinguishable because, unlike this case, the damages there were considered inseparable. *See id.* at 759.

We also disagree with the defendants that our case law is inconsistent with *Campbell*. As the trial court correctly noted, we have never addressed the question whether a property owner can recover severance damages arising from the government's use of adjoining lands owned by others. Rather, the cases that have addressed severance damages have dealt with the effect that the government's use of the property that was taken had on the remainder of the parcel. *See Lebanon Housing Auth. v. National Bank of Lebanon*, 113 N.H. 73, 74 (1973); *Stratton v. Jaffrey*, 102 N.H. 514, 517 (1960); *Adden v. Railroad*, 55 N.H. 413, 415-18 (1875).

Finally, the defendants argue that following the *Campbell* rule is contrary to the "before and after" and the "highest and best use" methods of calculating damages. These arguments lack merit because they are aimed at valuation, which is irrelevant to the initial *Campbell* analysis of what damages are compensable in a partial takings case. In essence, the damages the defendants seek are no different from the injury suffered by any property owner in the defendants' vicinity whose land was not taken. Such general damages are not compensable. *See Treat v. State*, 117 N.H. 6, 10 (1977).

*Affirmed.*

BROCK, C.J., and NADEAU and DUGGAN, JJ., concurred.